NOVA BIOMEDICAL CORPORATION,
Plaintiff-Appellant,

v.

Willi MOLLER, d/b/a/ Gebruder Moller
Glasblaserei, Defendant-Appellee.

Nos. 80–1083, 80–1106.

United States Court of Appeals,
First Circuit.

Argued In Camera April 9, 1980.

Decided Aug. 8, 1980.

Charles C. Winchester, Boston, Mass., with whom Fish & Richardson and John M. Skenyon, Boston, Mass., were on brief, for plaintiff-appellant.

William J. Cheeseman, Boston, Mass., with whom Foley, Hoag & Eliot, Boston, Mass., was on brief, for intervenor, Orion Research Incorporated.

John T. Roberts, Washington, D. C., with whom Irons & Sears, P. C., Washington, D. C., Ira K. Gross, and Sullivan & Worcester, Boston, Mass., were on brief, for defendant-appellee.

Before CAMPBELL and BOWNES, Circuit Judges, LOUGHLIN,* U. S. District Judge.

BOWNES, Circuit Judge.

This is a declaratory judgment action in which the plaintiff seeks a determination that a patent held by the defendant is invalid, unenforceable, and not infringed. The plaintiff, Nova Biomedical Corporation, is a Massachusetts corporation located in Newton and engaged in the manufacture and sale of medical instruments. The defendant, Willi Moller, is a citizen and resident of Switzerland and owner of a sole proprietorship in Zurich, formerly known as Gebruder Moller Glasblaserei. On November 28, 1979, the district court dismissed the complaint, ruling that Nova had failed to establish personal jurisdiction over Moller pursuant to Mass. Gen. Laws Ann. ch. 223A, § 3, the Massachusetts long arm statute. We reverse.

I.

The facts are undisputed. The patent in suit, which Moller acquired in 1970 from the Swiss inventor, covers an electrode capable, *inter alia*, of measuring potassium levels in fluids such as blood. Nova manufactures and sells a device which employs a similar electrode to perform the same function. On May 31, 1978, and again on March 16, 1979, Moller's attorneys wrote to Nova charging it with patent infringement; the first letter demanded that Nova "cease and desist" from such infringement, while the second suggested that a "prompt response" would avoid the "need for instituting litigation." Rather than following up on this threat, however, Moller filed a patent infringement suit on June 14, 1979, in the District of Columbia against two hospitals who had purchased the disputed electrode

system from Nova. Five weeks later, Nova filed the present action for declaratory relief and for an injunction against the customer suit.

Moller's principal contact with Massachusetts consists of a cross-licensing agreement with a Massachusetts corporation called Orion Research Incorporated, covering the patent in suit, another patent owned by Moller, and a patent owned by Orion. Although this agreement was formally consummated in March of 1979 at Orion's headquarters in Cambridge, Massachusetts, its basic terms had been settled upon by 1976, and Orion had commenced payment of royalties the following year. In addition to granting licensing rights and specifying the level of royalty payments for each of the three patents, the agreement, *inter alia*, requires an exchange of quarterly reports concerning worldwide sales of the covered electrodes, permits Moller to inspect Orion's books in Massachusetts, obligates each party to inform the other of any suspected infringement by third parties, and provides that the law of Switzerland will be controlling.

Through the first quarter of 1979, Orion had paid to Moller just under $50,000 in royalties under the second of the Moller patents covered by the agreement. By contrast, although Orion has manufactured "thousands" of the electrodes covered by the patent in suit, it has never paid any royalties to Moller therefor; the agreement provides that such electrodes are royalty-free to the extent they are sold by Orion to end users, as opposed to other manufacturers. Orion does, however, owe some royalties for its sale of these electrodes. It estimates that $10,000 is due, but the precise amount is disputed by the two parties. Orion's use of the patent in suit also confers upon Moller the secondary benefit of a substantially royalty-free use of Orion's patented device. The electrodes sold by Moller under the Orion cross-licensed patent—although ordinarily subject to a royalty—are royalty-free to the extent they do not exceed twenty percent of the number of elec-

---

* Of the District of New Hampshire, sitting by designation.

trodes sold by Orion under the patent in suit during the same accounting period. By means of this reciprocal arrangement, therefore, even those electrodes sold by Orion under the patent in suit that are nominally royalty-free provide a monetary benefit to Moller.

Of Moller's remaining contacts with Massachusetts, the most substantial has consisted of the sale to Orion of various products and chemicals. The largest of these transactions has been Orion's purchase in March of 1979 of over $110,000 worth of pH electrodes, approximately one-third of which had been shipped to Boston by the end of September. In addition, within the past two years, Moller has sold to Orion almost $19,000 worth of calcium ion exchanger and over $5,000 worth of sodium electrodes, connectors, and a chemical called valinomycin. All of these materials are unrelated to the electrodes covered by the patent in suit except for the chemical valinomycin, which is a component thereof. Moller and Orion have engaged in an extensive course of correspondence, devoted primarily to negotiation of the license agreement. Moller also has visited Massachusetts twice to confer with Orion personnel and to talk with another Massachusetts company concerning unrelated business. Finally, the defendant has negotiated in Switzerland with a third Massachusetts company regarding a license under the patent in suit. Moller maintains no office, representative, sales force, telephone, or bank account in Massachusetts and does not advertise in any publication distributed here.

## II.

A preliminary observation concerning the scope of the Massachusetts long arm statute is in order. In *"Automatic" Sprinkler Corp. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972), the Supreme Judicial Court described the function of this statute as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Yet even under this expansive view, all questions of long arm jurisdiction in Massachusetts do not collapse into a single constitutional inquiry. As the Court later explained:

> G.L. c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites.

*Good Hope Indus., Inc. v. Ryder Scott Co.,* 79 Mass.Adv.Sh. 1155, —— Mass. ——, 389 N.E.2d 76, 80 (1979); *accord, Carlson Corp. v. University of Vermont,* 80 Mass.Adv.Sh. 659, —— Mass. ——, 402 N.E.2d 483, 485 (1980). Thus, rather than giving way entirely to constitutional considerations, the statutory language imposes an additional set of constraints on a court's assertion of *in personam* jurisdiction. *See, e. g., Singer v. Piaggio & C.,* 420 F.2d 679, 681 (1st Cir. 1970); *North American Video Corp. v. Leon,* 480 F.Supp. 213, 216–18 (D.Mass. 1979).[1]

In each of the cases decided by the Supreme Judicial Court under Mass.Gen.Laws Ann. ch. 223A, § 3, the applicability of one of the statute's literal requirements was not seriously in question and the Court's attention was devoted to the constitutional inquiry. *See Carlson Corp. v. University of Vermont,* 402 N.E.2d at 485; *Good Hope Indus., Inc. v. Ryder Scott Co.,* 389 N.E.2d at 80; *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 376 N.E.2d 548, 551–53 (1978);[2] *"Automatic" Sprinkler*

---

1. *Compare, e. g., Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 377–78 (6th Cir. 1968), *discussed in Fulton v. Chicago, Rock Island & Pacific R. R.,* 481 F.2d 326, 334 n.5 (8th Cir.), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (similar state long arm statute, previously construed to extend to limits of Constitution, viewed as imposing single constitutional test; "pedantic quibbling" with wording of statute deemed inappropriate).

2. Despite the Court's conclusion in *Droukas* that "the defendant's contacts with Massachusetts were insufficient to constitute the transac-

*Corp. v. Seneca Foods Corp.*, 280 N.E.2d at 425–26. The instant case presents the converse situation. There is little dispute that the assertion of jurisdiction would comport with due process, given Moller's extensive and ongoing contacts with the forum.[3] *See, e. g., Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 233–36 (D.N.J.1966). At issue, instead, is whether the statutory prerequisite upon which Nova exclusively relies—the "transacting business" provision—has been satisfied. That section of the statute provides:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

    (a) transacting any business in this commonwealth . . . .

Mass.Gen.Laws Ann. ch. 223A, § 3(a). Two questions are presented: (1) whether the mailing of two letters charging patent infringement and threatening litigation constitutes the "transacti[on]" of "business"; and (2) whether Nova's cause of action can be viewed as "arising from" Moller's licensing arrangement with Orion. An affirmative answer to either will suffice to support jurisdiction.

### III.

Despite the paucity of pertinent Massachusetts case law, there are several indications that the "transacting any business" clause should be construed broadly. First, the Supreme Judicial Court has ruled that the provision is not limited to commercial activity by the defendant, but rather "is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." *Ross v. Ross*, 371

tion of business in the Commonwealth so as to come within the reach of § 3(a)," *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 376 N.E.2d 548, 551 (1978), the decision there rested on constitutional rather than statutory grounds. In *Good Hope Indus., Inc. v. Ryder Scott Co.*, 79 Mass.Adv.Sh. 1155, —— Mass. — , 389 N.E.2d 76, 81 n.13 (1979), the Court described the *Droukas* holding as follows: "[W]hile the defendant . . . might be viewed literally as having 'transact[ed] . . . business' in Massachusetts, [its] contacts with the Commonwealth were constitutionally insufficient to support jurisdiction under G.L. c. 223A, § 3(a)."

**3.** By entering into the licensing agreement with Orion and visiting Massachusetts twice on related business, Moller has "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). We thus think it apparent that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court [here]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Certainly, if a dispute arose over the licensing agreement, Orion could gain jurisdiction over Moller in a Massachusetts court consistently with due process.

Other factors relevant to the constitutional inquiry, *see, e. g., id.* at 4081; *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1083 (1st Cir. 1973), reinforce the propriety of asserting jurisdiction in the present case. First,

Massachusetts has an undeniable interest in providing a forum for residents accused of patent infringement. *See generally Carlson Corp. v. University of Vermont*, 80 Mass.Adv.Sh. 659, ·· Mass. ––—, 402 N.E.2d 483, 487 (1980). Second, considerations of convenience to the parties, as manifested by the applicable venue statutes, militate in favor of jurisdiction here; Massachusetts is both a permissible forum for suit against Moller, 28 U.S.C. § 1391(d) (1970), and a necessary forum for any patent infringement action against Nova, 28 U.S.C. § 1400(b) (1970). Also relevant in this regard is our recognition of a "rebuttable presumption that a manufacturer's declaratory judgment action, in its home forum, . . . should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued." *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 738 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977) (footnotes omitted). Finally, whether or not Nova's suit can be said to "arise from" Moller's principal contacts with the forum, the two are connected at least in the sense that they involve the same patent. In any event, the fact that a controversy is unrelated to the defendant's activity in the forum is not necessarily fatal to the existence of jurisdiction there, so long as its forum-related business is substantial. *Compare, Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 418–419, 96 L.Ed. 485 (1952), and *Garcia Pujol v. United States Life Ins. Co.*, 396 F.2d 430, 431–32 (1st Cir. 1968), *with Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 at 906 (1st Cir. 1980).

Mass. 439, 358 N.E.2d 437, 439 (1976).[4] Second, a liberal reading of section 3(a) is suggested by the Court's decision in *Droukas*, where the nonresident defendant's sale of two marine engines to the plaintiff, even though constituting "an isolated transaction" with "slight effect on the commerce of the Commonwealth," [5] 376 N.E.2d at 551, apparently [6] satisfied the "transacting business" requirement. Finally, as a general matter, the remedial nature of the long arm statute, *see Kagan v. United Vacuum Appliance Corp.*, 357 Mass. 680, 260 N.E.2d 208, 210–11 (1970), argues for a liberal construction of its provisions. Zabin, *The Long Arm Statute: International Shoe Comes to Massachusetts*, 54 Mass.L.Q. 101, 117 (1969). Nevertheless, the "transacting business" requirement is not without some bite. In *Nichols Assocs., Inc. v. Starr*, 4 Mass.App. 93, 341 N.E.2d 909 (1976), the plaintiff attempted to sue a Connecticut resident to recover the value of services rendered under a surveying contract. Notwithstanding that (1) the plaintiff performed a portion of the surveying work at its Massachusetts office, and (2) the defendant occasionally dispatched an employee to the plaintiff's office to pick up plans, the Appeals Court concluded that the defendant was not "transacting any business" in Massachusetts within the meaning of section 3(a). *Id.* 341 N.E.2d at 912–13.

To support its contention that the mailing of two letters charging patent infringement and threatening litigation constituted the transaction of business, Nova relies principally on *B & J Manuf. Co. v. Solar Indus., Inc.*, 483 F.2d 594 (8th Cir. 1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974). The plaintiff there brought suit in its home forum of Minnesota against an Illinois corporation, seeking a declaratory judgment that a patent owned by the defendant was invalid and not infringed. The plaintiff attempted to assert personal jurisdiction under the "transacting business" provision of the Minnesota long arm statute, a provision which corresponds closely to its counterpart in the Massachusetts statute. The defendant's contacts with the forum consisted principally of (1) its advertisement in various publications distributed there, (2) the sale of various products, other than that covered by the patent in suit, to independent distributors located in Minnesota, and (3) its maintenance of "trouble shooters" in or near the state to assist users of the company's products. In addition, the defendant had written several letters to the plaintiff, charging it with infringement and threatening suit if the plaintiff refused to discontinue the manufacture and sale of its competing product. The court concluded that the statutory requirements had been met:

> [T]here is no doubt but that the requests and threats were designed to reduce competition and thereby improve defendant's marketing and economic position. As such, we are convinced that the sending of these letters did, in a very real sense, constitute a transaction of business in Minnesota.

*Id.* at 598. After determining that the defendant's various contacts with the forum, when viewed together, were sufficient to satisfy due process, the court sustained jurisdiction.

---

4. *Ross* involved an action to enforce the terms of a separation agreement, in which the plaintiff successfully argued that his nonresident former wife had transacted business in the Commonwealth by using the state courts to obtain an increase in the level of support initially ordered in a divorce decree that had adopted the support provisions of the separation agreement.

5. The defendant's only contacts with Massachusetts consisted of placing an advertisement in a publication distributed here, receiving the plaintiff's telephonic order for the two marine engines, sending correspondence to the plaintiff confirming the sale, and shipping the engines from Florida to Massachusetts.

6. As noted earlier, *see* note 2 *supra*, although the language in *Droukas* suggested that the denial of jurisdiction was based on noncompliance with the statute, the Court later interpreted that decision as resting on constitutional grounds, adding that the defendant "might be viewed literally as having 'transact[ed] . . . business' in Massachusetts . . . ." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 79 Mass. Adv.Sh. 1155, —— Mass. ——, 389 N.E.2d 76, 81 n.13 (1979).

The court below dismissed the *B & J* decision as "not persuasive," and the reaction of other courts has been decidedly mixed.[7] Nonetheless, although its application to the facts of that case gives us slight pause,[8] we think the Eighth Circuit's rule has substantial merit in appropriate circumstances. The mailing of a letter charging patent infringement and threatening litigation is clearly a "purposeful" act by the defendant. *Ross v. Ross*, 358 N.E.2d at 439. And although such an action, by itself, represents but an isolated and transitory contact with the forum, that is all the statute requires: in *Carlson Corp. v. University of Vermont*, 402 N.E.2d at 485, the Supreme Judicial Court found that the defendant had transacted business based solely on a single visit to Massachusetts to sign a construction contract. But we need not, and indeed should not, attempt to identify all the circumstances in which the sending of such a letter will constitute the transaction of business within the meaning of section 3(a); the scope of that term "must be decided on the particular facts involved." *Droukas v. Divers Training Academy, Inc.*, 376 N.E.2d at 553. It is enough here to conclude that the statutory requirement is met (1) where the defendant already is conducting or planning some patent-related business activity in the forum, whether directly, by engaging in the manufacture or sale of products, or indirectly, by receiving royalties from a licensee who is so engaged, and (2) where the plaintiff is pursuing a competing line of work there. In these circumstances, the mailing of a letter that charges infringement and threatens suit can reasonably be considered an attempt "to reduce competition and thereby improve defendant's marketing and economic position." *B & J Manuf. Co. v. Solar Indus., Inc.*, 483 F.2d at 598. In fact, given their common source and potential impact on one another, we think it justifiable in this context to view a charge of infringement as an extension or a component of the defendant's patent-related business activities in the forum[9]

7. The *B & J* holding has been specifically embraced by several courts, *see Cardiac Pacemakers, Inc. v. Coratomic, Inc.*, 201 U.S.P.Q. 679, 680 (D.Minn.1979); *Chromium Indus., Inc. v. Mirror Polishing & Plating Co.*, 193 U.S.P.Q. 158, 161 (N.D.Ill.1976), and extended, perhaps inadvertently, by another. *See Chamfer Engineering, Inc. v. Topco Int'l, Inc.*, 82 F.R.D. 33, 35 (D.Minn.1979) (sending letter threatening suit for patent infringement satisfies due process as well as long arm statute). *See also* Silverstein, *New Dimensions in Patent Litigation Under the Massachusetts Long-Arm Statute*, 9 Suffolk L.Rev. 1, 9 n.37 (1974). Several other courts have flatly rejected it, *see Cascade Corp. v. Hiab-Foco AB*, 200 U.S.P.Q. 594, 595 (D.Or.1977), *aff'd on other grounds*, 619 F.2d 36 (9th Cir. 1980); *Rebound Systems, Inc. v. Matchpoint Indus., Inc.*, 192 U.S.P.Q. 346, 347·48 (S.D.N.Y.1976) (alternative holding), or have construed it narrowly. *See Rheem Manuf. Co. v. Johnson Heater Corp.*, 370 F.Supp. 806, 808 (D.Minn.1974) (alternative holding). In other cases involving mailed charges of patent infringement, courts have found the defendant's combined contacts with the forum insufficient to satisfy due process and have distinguished *B & J* on constitutional grounds, thereby sidestepping the "transacting business" issue. *See, e. g., Cascade Corp. v. Hiab-Foco AB*, 619 F.2d Or. at 38; *Blumhardt Manuf., Inc. v. Nu-Flex Irrig., Inc.*, 201 U.S.P.Q. 681, 683, 685 (D.N.D. 1977); *National Standard Co. v. Garbalizer Corp.*, 200 U.S.P.Q. 591, 593 (N.D.Ohio 1977); *Wesley-Jessen, Inc. v. Volk*, 200 U.S.P.Q. 795, 796 97 (N.D.Ill.1976); *Rebound Systems, Inc. v. Matchpoint Indus., Inc.*, 192 U.S.P.Q. 346, 347 (S.D.N.Y.1976) (alternative holding); *Rheem Manuf. Co. v. Johnson · Heater Corp.*, 370 F.Supp. 806, 808 (D.Minn.1974) (alternative holding). *See also Conwed Corp. v. Nortene, S. A.*, 404 F.Supp. 497, 505–06 (D.Minn.1975).

8. Since the products sold by the defendant in Minnesota did not include the patented item, it is not immediately apparent that "the requests and threats were designed to reduce competition and thereby improve the defendant's marketing and economic position." *B & J Manuf. Co. v. Solar Indus., Inc.*, 483 F.2d 594, 598 (8th Cir. 1973), *cert. denied*, 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974). However, the defendant apparently had refrained from selling the patented product there in an attempt to defeat jurisdiction. Moreover, the previous owner of the patent had sold the product in Minnesota. From these facts, one can infer that the defendant intended to reintroduce the product in Minnesota once the jurisdictional issue had been resolved, in which case the court's conclusion would be supportable.

9. Viewing Moller's charge of infringement in this light, of course, goes far towards resolving the second question presented as an alternative on appeal: *viz*, whether Nova's cause of action can be regarded as "arising from" Moller's li-

—particularly where, as here, the patentee and licensee have collaborated closely on the question of the plaintiff's alleged infringement.[10] Under this approach, a mailed notice of infringement in the context described clearly would satisfy the statutory prerequisite.

It is argued that any rule which automatically subjects a patentee to foreign jurisdiction whenever he demands recourse from an infringer would be both undesirable and unfair. The argument runs as follows. First, such a rule would discourage the giving of written notice of patent infringement and lead to the filing of suit without warning—"the blitzkreig nature of the attack being necessary to avoid vulnerability to foreign jurisdiction." *Conwed Corp. v. Nortene, S. A.*, 404 F.Supp. 497, 506 n.8 (D.Minn.1975). Concomitantly, it would discourage the settlement of disputes. Alternatively, it is noted that a patentee is under some compulsion to provide written notice of infringement; not only do the patent laws anticipate that such notice "will be routinely sent prior to litigation," *id.*, but a patentee's failure to do so may sharply limit his recoverable damages. *See* 35 U.S.C. § 287 (1970); *Dunlap v. Schofield*, 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894). *See also Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 480–82 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct.

132, 46 L.Ed.2d 99 (1975) (laches and estoppel). Thus, to subject a patentee to foreign jurisdiction on this basis is said to be unfair.

We do not dispute the force of these legitimate, albeit contradictory, concerns. For two reasons, however, we do not consider them seriously threatened by the conclusion reached here. First, mailing a letter charging infringement and threatening suit is already a two-edged sword; it is well-established that such conduct creates an "actual controversy" and thus gives rise to a cause of action under the Declaratory Judgments Act, 28 U.S.C. § 2201 (1970). *E. g., Brisk Waterproofing Co. v. A. Belanger & Sons, Inc.*, 209 F.2d 169, 170 (1st Cir. 1954). The question of *where* a patentee can be sued—while admittedly important, *see Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 738 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977) —would seem subordinate to that of *whether* it can be sued at all.[11] Thus, our conclusion should affect only marginally a patentee's decision whether or not to send a notice of infringement.

More importantly, we do not hold here—nor did the court in *B & J Manufacturing*—that "sending threatening infringement letters into the forum district suffices to succumb to that district's jurisdiction." *Cascade Corp. v. Hiab-Foco AB,*

10. Under the licensing agreement, Moller and Orion are obliged to inform the other of any suspected infringement by third parties. On November 22, 1977, Orion reported Nova's alleged infringement to Moller and threatened to cease payment of royalties if the condition continued. Several months later, Orion sent to Moller's Swiss attorney, at the latter's request, draft infringement notices with a suggestion that they be signed by Moller and sent under his letterhead. In addition, Orion recommended a United States patent attorney to Moller at his request, obtained one of Nova's electrodes, presumably for examination, and advised Moller of indications that Nova might be willing to settle.

11. If jurisdiction over Moller were found lacking in Massachusetts, Nova could bring a declaratory judgment action against him in the District of Columbia under 35 U.S.C. § 293 (1970).

censing arrangement with Orion. While we express no opinion as to the reach of the "arising from" language, we note that other courts in related contexts have adopted an expansive view of this term. *See, e. g., Medtronic, Inc. v. Mine Safety Appliances Co.*, 468 F.Supp. 1132, 1144–47 (D.Minn.1979); *Dyform Concrete (Pre-Stressed) Ltd. v. Spiroll Corp. Ltd.*, 370 F.Supp. 290, 292–93 (D.Minn.1973); *Chemical Specialties Sales Corp. v. Basic Inc.*, 296 F.Supp. 1106, 1109-10 (D.Conn.1968). Also worthy of note is the fact that, in situations similar to the one at bar, courts have recognized a close connection between a patent declaratory judgment action and the defendant's patent-related licensing or rental activities in the forum. *See, e. g., Didactics Corp. v. Welch Scientific Co.*, 291 F.Supp. 890, 895 (N.D.Ohio 1968); *Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 235 (D.N.J.1966); *see also Eastman Kodak Co. v. Studiengesellschaft Kohle*, 392 F.Supp. 1152, 1156-57 (D.Del.1975).

200 U.S.P.Q. 594, 595 (D.Or.1977), *aff'd on other grounds,* 619 F.2d 36 (9th Cir. 1980) (footnote omitted) (description of *B & J* holding). What we do hold is that such conduct can, in certain circumstances, constitute the transaction of business within the meaning of the Massachusetts long arm statute. Whether a patentee is thereafter subject to jurisdiction will depend on whether he possesses sufficient contacts with the forum to satisfy due process. While it is unnecessary for us to reach the question in light of Moller's extensive contacts with Massachusetts, *see* note 3 *supra,* we note that the mailing of an infringement notice—standing alone—has rarely been deemed sufficient to satisfy the constitutional standard. *See* note 7 *supra.*

### IV.

In light of the facts described—and with particular reference to Moller's receipt of royalties from Orion's use of the patent in suit and the competitive positions of Nova and Orion—we conclude that Moller's threatening infringement notices to Nova constituted a transaction of business under. section 3(a) giving rise to the present cause of action. With the requirements of both the long arm statute and due process satisfied, the district court can properly assert *in personam* jurisdiction over the defendant.

Nova has sought two additional forms of relief: an injunction against further proceedings in the District of Columbia action and a modification of a protective order issued by the district court. We prefer to let the lower court address these issues initially. Although, on the present record, this case would appear to invoke the "rebuttable presumption" recognized in *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d at 738, we think any decision as to an injunction should be made after consideration of any recent developments. With respect to the scope of the protective order, the lower court expressly declined to reconsider this issue in the belief that it lacked jurisdiction. We think it should have a chance to do so, particularly because a question of mootness has subsequently emerged.

*Reversed and remanded.*