Kathleen SCHAEFER, Plaintiff,

v.

CYBERGRAPHIC SYSTEMS, INC., Cybergraphic Systems, Pty., Ltd., Robert Brierly, Ronald Hoolahan, and Bernard Grinberg, Defendants.

Civ. A. No. 93–12421–WGY.

United States District Court,
D. Massachusetts.

Sept. 21, 1994.

Susan R. Byrd, Wakefield, MA, for plaintiff Kathleen Schaefer.

Barbara A. O'Donnell, Sherin & Lodgen, Boston, MA, for defendants Cybergraphic Systems, Inc., Cybergraphic Systems, Pty., Ltd., Robert Brierly, Bernard Grinberg, Ronald Hoolahan.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. Background and Prior Proceedings

The plaintiff, Kathleen Schaefer ("Schaefer"), brings this action alleging gender bias and violations of the Fair Labor Standards Act and the Racketeer Influenced and Corrupt Organizations Act, as well as pendant state law contract and tort claims. She named as defendants Ronald Hoolahan ("Hoolahan"), Bernard Grinberg ("Grinberg"), and Robert Brierly ("Brierly"), as well as Cybergraphic Systems, Pty. Ltd. ("Limited") and Cybergraphic Systems, Inc. ("Cybergraphic").

As alleged by Schaefer, the relevant facts of the case would seem to be as follows: Schaefer worked for Cybergraphic, a Massachusetts corporation that is a subsidiary of Limited, from 1983 until she was terminated in 1992. From 1987 until 1992, Schaefer worked for Cybergraphic as a commission sales representative. This work required her to travel extensively in the United States and abroad selling Cybergraphic's computer software and hardware to newspaper companies and publishers. When Schaefer became a sales representative, Cybergraphic agreed in writing to pay her a base salary plus commissions of 3–5% net on any computer sales she made. Additionally, Cybergraphic agreed to reimburse her for any business-related expenses regardless of whether she was successful in making a sale. Initially, Schaefer was successful at her work and made lucrative sales for Cybergraphic.

By 1992, however, Schaefer's relationship with Cybergraphic had deteriorated and her contacts with Robert Brierly, a manager at Cybergraphic, were tense. Schaefer alleges that at this same time Hoolahan and Grinberg, each a shareholder and director both of Limited and Cybergraphic, began to interfere with her work. Despite the fact that Schaefer was not an employee of Limited, Brierly assigned Schaefer to work in Australia on Limited's Fiji, Christchurch, and Cumberland orders. According to Schaefer, Brierly, Hoolahan, and Grinberg conspired to make the working environment uncomfortable for her. For example, Schaefer claims that Hoolahan required her to water his plants and watch his cat when he was out of town. No other employee was required to perform these tasks, and Schaefer suspects that Hoolahan singled her out specifically because of her gender. Schaefer also alleges that Hoolahan, Grinberg, and Brierly induced her to make sales to clients and then subsequently conspired through the use of wire transmissions and the United States Postal Service to keep for themselves $348,000 in commissions owed to her.

Limited, Hoolahan, and Grinberg moved to dismiss for lack of personal jurisdiction on June 27, 1994. Limited, an Australian corporation, argued that it does not control the day-to-day business activities of its subsidiary Cybergraphics, which is located in Wakefield, Massachusetts, and that it therefore lacks minimum contacts with this state. Limited claims that any exercise of jurisdic-

tion over it by this Court would violate due process under the United States Constitution. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court heard oral arguments on the motions to dismiss on July 28, 1994. At the hearing, it developed that this is one of a number of complaints filed by Schaefer against various individuals and entities including certain of the present defendants. One such suit, pending in the Massachusetts Superior Court, was represented to be well on its way to settlement or trial. The Court therefore suggested that the wisest course might be administratively to close this case and await results in the Massachusetts Superior Court. Not surprisingly, the defendants favored this course, while Schaefer demurred. Ruminating, the Court stated that it was reluctant to require Hoolahan and Grinberg, both Australian citizens and residents, to defend themselves in Massachusetts. The Court noted that, even if the two had "minimum contacts" with Massachusetts, the distance between Boston and Australia alone placed so great a burden on the individual defendants as could well deny them the "fair play" required by *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158.

Schaefer's main concern emerged at this point. Her counsel ceased to press as to the individual defendants (without in any way abandoning the point) and turned to arguing strenuously that Cybergraphics is, in fact, insolvent and that Limited therefore is the only defendant with assets to pay Schaefer in the event she prevails. Counsel pointed out that in 1993 Cybergraphic's landlord initiated summary process proceedings against it in the Malden District Court. Cybergraphics eventually lost that suit and still owes the landlord thousands of dollars in unpaid rent. Due to Cybergraphic's financial difficulties, Limited advanced over $3,000,000 to Cybergraphics to meet its financial obligations. Cybergraphic, however, has not improved financially, and as a result California recently suspended Cybergraphic's corporate status. Thus, counsel explained, it is crucial for Schaefer to ascertain—for settlement purposes if nothing else—whether Limited is subject to the personal jurisdiction of this Court.

Accepting *arguendo* that, absent Limited, Schaefer may not be able to recover her estimated damages from the individual defendants, the Court, with the general agreement of the parties, took under advisement the issue of personal jurisdiction over Limited and otherwise administratively closed the case pending a resolution of the most closely related Massachusetts Superior Court case. This memorandum accordingly focuses solely on the issue of personal jurisdiction over Limited.

## II. Analysis

A plaintiff can establish jurisdiction over a foreign defendant by proving two elements: 1) that a statute specifically authorizes jurisdiction over the defendant and 2) that the exercise of jurisdiction comports with due process requirements under the United States Constitution. *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1086 (1st Cir.1992).

A defendant who challenges the personal jurisdiction of a district court over it shifts the burden of producing the facts necessary to establish jurisdiction onto the plaintiff. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904 (1st Cir.1980). The burden is thus on Schaefer to demonstrate that Limited is subject to this Court's jurisdiction. More specifically, Schaefer must make a prima facie showing that personal jurisdiction exists. *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir.1992). Under the prima facie analysis, the Court considers only whether the admissible evidence that the plaintiff has submitted in the record is sufficient to support findings on each jurisdictional element. *Id.* Moreover, "[i]n determining whether a prima facie showing has been made, the district court is not acting as a factfinder. It accepts properly supported proffers of evidence by a plaintiff as true." *Id.*

While the prima facie test is a lenient standard, a plaintiff cannot simply rely on unsupported allegations in her pleadings to establish personal jurisdiction over a defendant. Rather, she must set forth, through affidavits and other competent evidence, spe-

cific facts on each jurisdictional element. *Id.* (unsupported allegations are insufficient to make a prima facie showing of personal jurisdiction, which "must be based on evidence of specific facts set forth in the record").

The purpose of this deferential standard is to allow the plaintiff the opportunity to present her claim to the court without having to confront from the outset of the case the problems of the weighing of the evidence and the credibility of witnesses that a "full dress jury trial" usually entails. *Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 55 (D.Mass.1987). Accordingly, a plaintiff's successful prima facie showing warrants a preliminary ruling that personal jurisdiction over the defendant exists. The final determination on the issue of jurisdiction will be made by the Court based on the facts established at trial. *North Am. Video Corp. v. Leon,* 480 F.Supp. 213, 216 (D.Mass.1979) (Keeton, J.).

### A. Jurisdiction Under Mass.Gen.L. ch. 223A § 3

The Massachusetts long-arm statute, Mass.Gen.L. ch. 223A § 3 (1985), specifically authorizes this Court *inter alia* to exercise personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's" (a) transacting business in this state or (b) owning or having an interest in real property in this Commonwealth.

Here, Schaefer demonstrates that Limited transacted business in this state, in that Grinberg had daily phone contact from Australia with Cybergraphics personnel on business matters. (Thomas Aff. at ¶8). *See Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 195 (1st Cir.1980) (mailing letter into Massachusetts threatening patent litigation constitutes "transacting business" under long-arm statute). Moreover, Schaefer offers evidence that Limited currently owns an office in Burlington, Massachusetts, which would give it an interest in real property in this state. (Byrd Aff. at ¶10, Exh. 6). Schaefer therefore offered evidence that jurisdiction over Limited may be authorized by Mass.Gen.L. ch. 223A § 3.

Section 3 is, however, a grant of "special" as distinct from "general" jurisdiction. *United Elec. Workers,* 960 F.2d at 1086. The "arising from" language of section 3 requires that a plaintiff prove a substantial nexus between the cause of action and the defendant's in-state activity. *Marino v. Hyatt Corp,* 793 F.2d 427, 428–30 (1st Cir. 1986) (defendant's in-state conduct must form a material element of proof in plaintiff's case); *Hahn v. Vermont Law School,* 698 F.2d 48, 51 (1st Cir.1983) (defendant's forum-based conduct must be "instrumental" to the cause of action). Here, Schaefer puts forth no facts whatsoever that describe how Grinberg's phone calls or Limited's business office relate to the withholding of her commissions or the disparate gender treatment to which she alleges she was subjected. Consequently, Schaefer fails to meet the relatedness requirement under the Massachusetts long-arm statute.

### B. Veil Piercing

Nothing daunted, Schaefer argues strenuously that she need not have recourse to long-arm jurisdiction in order to maintain this action against Limited. She asserts that Limited so completely controls Cybergraphic's daily business activities in Massachusetts that this Court ought disregard Cybergraphic's separate corporate identity and "pierce Cybergraphic's corporate veil" to exercise personal jurisdiction over its parent, Limited.

A plaintiff who asks a court to disregard independent corporate structures by piercing a subsidiary's "corporate veil" faces a high burden of proof. The concept of limited liability is so basic a principle of corporate law that courts are hesitant to disregard the independent corporate structure as between a parent corporation and its corporate subsidiaries. *United Elec. Workers,* 960 F.2d at 1091. Indeed, the First Circuit has held in *Escude Cruz* that a plaintiff who argues that a company's corporate veil should be pierced must provide "clear evidence that the parent in fact controls the activities of the subsidiary." *Escude Cruz,* 619 F.2d at 905.

Since *Escude Cruz,* this circuit has elaborated on the "clear evidence" standard. In

federal question cases, a plaintiff who argues that the corporate veil should be pierced must prove three elements. First, the plaintiff must prove that manifest injustice will fall on the party in favor of veil piercing should the court uphold the corporate shield. Second, the plaintiff must prove that the parent and subsidiary ignored the independence of their separate operations. Third, the plaintiff must show that the principal had some fraudulent intent in its modus operandi. *United Elec. Workers*, 960 F.2d at 1093–94. This third point is most significant because it imposes in federal question cases an element of proof not to be found in Massachusetts corporate law. *Compare My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968) (Cutter, J.) (veil piercing allowed where parent simply exercises "pervasive control" over subsidiary).

Assaying the first hurdle erected by *United Elec. Workers*, Schaefer has proffered evidence that she worked on Limited's Fiji, Christchurch, and Cumberland, Australia orders. She estimates that Limited still owes her approximately $348,000 in unpaid commissions and unreimbursed business-related expenses. Given Cybergraphic's bleak financial future and the uncertainty of personal jurisdiction over Hoolahan and Grinberg, Schaefer would have to carry this litigation to Australia if the Court recognizes the corporate independence of Limited and Cybergraphic. Schaefer demonstrates that she lacks the economic clout to track Limited to its lair and has therefore shown that she will suffer manifest justice if Limited actually ignored the corporate independence of Cybergraphic and itself does business here in Massachusetts.

Schaefer also surmounts the second hurdle of *United Elec. Workers*. She makes a prima facie showing that Limited and Cybergraphic ignored the independence of their separate operations. Les Thomas, a shareholder in both Limited and Cybergraphic and a former Cybergraphic officer, stated that the two companies often conducted business "as if the two companies were one" and comingled staff, sales, products, and personnel. (Thomas Aff. at ¶ 8). At trade shows, Limited and Cybergraphic presented themselves as one company. (Thomas Aff. at ¶ 10). Additionally, Limited appears to have taken over Cybergraphic's role as Schaefer's employer, as Schaefer worked on Limited sales prospects and presentations in Australia even though her employment contract was with Cybergraphic. Finally, a letter from the law firm of Hutchins and Wheeler indicated that the firm would perform no legal work for Cybergraphic without Limited's approval. (Exhibit D). This evidence supports Schaefer's contention that Limited and Cybergraphic ignored the independence of their separate corporate operations. Accordingly, Schaefer has made a prima facie showing of the first and second elements in *United Elec. Workers*.

Having come this far, Schaefer is entitled, under Massachusetts case law, to strip away Cybergraphic's corporate veil and confront Limited directly—at least she would be so entitled if her only claims were the pendant state causes of action. *My Bread Baking Co.*, 353 Mass. at 619, 233 N.E.2d 748. But she is here in federal, not state, court and to stay here she must demonstrate subject matter as well as personal jurisdiction. Because Schaefer necessarily grounds subject matter jurisdiction on the federal questions she raises, she must confront *United Elec. Workers*'s third hurdle.[1]

Here Schaefer stumbles. The fraudulent intent element requires a plaintiff to show some blameworthy conduct or culpability on the parent's part in controlling the subsidiary. *United Elec. Workers*, 960 F.2d at 1093 ("It is only when the quest to limit corporate responsibility evolves into a specific effort to evade a parent corporation's legal obligations that the possibility of veil piercing begins to loom"). Fraudulent behavior includes, without limitation, "maintain[ing] the subsidiary to avoid a statutory responsibility, act[ing] in a blameworthy manner, loot[ing] the subsidiary, or so undercapitalizing the

---

1. Note that diversity jurisdiction is lacking here since Schaefer, Brierly, and Cybergraphic are all citizens of Massachusetts.

subsidiary that the latter could not reasonably have been expected to meet its obligations." *Id.*

Schaefer alleges that Limited has fraudulently conveyed all of Cybergraphic's assets to its newly formed subsidiary in California, Cybergraphic, Inc. ("California Cybergraphic"), so that even if Schaefer prevails against Cybergraphic at trial she will only have a paper judgment. She advances three arguments to support this contention. Two miss the mark entirely; the third is debatable.

First, Schaefer contends that Cybergraphic actually admitted in its answer to her state court complaint that the reason for the transfer of its assets was to "eliminate liabilities associated with the current.... litigation." (Byrd Aff. at ¶ 2, Exh. 1). Cybergraphic's state court answer, however, does not bear out this conclusion. The words quoted from the Byrd affidavit do not appear there anywhere. (Byrd Aff., Exh. 1I). Perhaps if Schaefer had included her state court complaint in the record, this Court could have compared it to Cybergraphic's answer in order to flesh out what allegations Cybergraphic actually admitted. Having failed to do so, however, the record is barren on this point since the best evidence of Cybergraphic's state court answer is the writing itself and Byrd's characterization of it is inadmissible hearsay.

Second, Schaefer states that a contact person for Cole Publishing Company, a Cybergraphic client, called her expressing concern over Cybergraphic's reorganization. The contact person allegedly stated that Cybergraphic had warranted to him that it owned a certain software license when, in fact, it only licensed the code from Limited. Moreover, the contact person also stated that when he expressed concern that Cybergraphic had not deposited the source code into the escrow account as promised, Cybergraphic told him he would have to renegotiate his contract with California Cybergraphic. He further stated that several other of Cybergraphic's customers were having the same problem and were concerned. (Byrd Aff., Exh. 1F [Schaefer Aff.] at ¶ 5). This, says Schaefer, is evidence of misrepresentation by Limited

acting through its sham puppet, Cybergraphic.

The short answer is that these statements are all inadmissible hearsay. Fed.R.Evid. 801. Schaefer did not submit any affidavits from any of the clients she says complained of misrepresentations concerning the source code, nor is there any way, based on the evidence in the record, for this Court to know if those statements are true. Therefore, this Court cannot rule that those statements are competent evidence as required under *Boit,* 967 F.2d at 675.

Third, Schaefer intimates that Limited is looting Cybergraphic by transferring its assets to California Cybergraphic. She points out that the Massachusetts Superior Court, Hamlin, J., has preliminarily enjoined Limited, Cybergraphic, and California Cybergraphic from transfer of Cybergraphic's assets except in the normal course of business so that Schaefer will have assets to claim if she prevails on her related state court action. (Exhibit C). Moreover, Schaefer proffers a letter from Limited dated April 7, 1994, and circulated to its clients, stating that Limited intends to render Cybergraphic "dormant as a Cybergraphic trading entity" and that California Cybergraphic is the new American Cybergraphic subsidiary. (Exhibit G). Limited responds that it is acting in good faith to liquidate unneeded assets in order to downsize the company and pay off the company's creditors. (Byrd Aff., Exh. 1G [Hollands Aff.] at ¶¶ 12–16).

What is one to make of this? The injunction entered by my Superior Court colleague is not factually preclusive as it is but preliminary, *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (findings of fact made at preliminary injunction stage not binding at trial); *Community Nutrition Institute v. Block,* 749 F.2d 50, 56 (D.C.Cir.1984) (preliminary injunctions not factually preclusive in other litigation), and while I might take judicial notice of her action, Fed.R.Evid. 201(b), her view of these matters is hearsay in this Court and thus will not count toward Schaefer's prima facie showing. On the other hand, the Court must take Limited's April 7th letter at face value, at least at this stage,

without the interpretive gloss provided by the Hollands affidavit.

What emerges from this record, then, is a picture of Limited largely disregarding the corporate form it gave Cybergraphic and, instead, using Cybergraphic as its alter ego to do business in Massachusetts and elsewhere. Far from looting Cybergraphic, though, it appears that, as economic turmoil rose in the computer industry, Limited kept pumping money *into* Cybergraphic. Indeed, it was only when these transfusions failed to revive the increasingly moribund Cybergraphic and litigation apparently prompted Limited to seek competent legal advice within the United States, that Limited established California Cybergraphic—the better both to operate from the Pacific rim rather than from here in Massachusetts, *and* to insulate itself more effectively from future litigation within the United States.

> This is far from classic fraud. But—
> [t]o be sure, the word "fraud" has a protean quality. It connotes different things in different settings. In the ... veil-piercing sense, "fraud" may inhere even short of the reprehensible behavior necessary to prove, say, criminal fraud or independently actionable civil fraud. Then, too, the kind and quantum of fraud may be less than under some state-law veil-piercing rules. But, although the fraud threshold is lower when veil piercing is attempted in [a federal question] case, the threshold is not invisible.

*United Elec. Workers,* 960 F.2d at 1093.

In the present case, while Schaefer has demonstrated none of the exemplars of fraud in the jurisdictional sense which are noted in *United Elec. Workers,* this Court views that list as nonexhaustive. Thus, this Court rules that, in the totality of the present circumstances, Schaefer has demonstrated fraud in the jurisdictional sense. Viewed as a whole, her prima facie showing, while hardly compelling, is adequate. Limited exercised pervasive control over Cybergraphic throughout the period at issue here, treating Cybergraphic as its alter ego in Massachusetts and elsewhere throughout the United States. Schaefer has not the wherewithal to maintain her action in a forum that, while equally competent and learned, is halfway around the world. And Limited, however innocuous and business driven its past actions, is now trying to withdraw, Oz-like, behind the screen of California Cybergraphic and take its major assets with it. This is enough.

### III. Order

For the foregoing reasons this Court holds that, for jurisdictional purposes, it may properly pierce the veil of Cybergraphic and exercise personal jurisdiction over Limited. Accordingly, Limited's motion to dismiss for lack of personal jurisdiction is DENIED. Until further order of the Court upon motion of any party, the case will remain administratively closed.