Bohn, J.
BACKGROUND
The defendants, Starnet Development, Inc., CAM Systems, Inc. and the Lenfest Group, have moved to dismiss the amended complaint on the grounds that this court lacks personal jurisdiction over the defendants (Rules 12(b)(2) and 19 of the Massachusetts Rules of Civil Procedure); and, that the case should be dismissed under the doctrine of forum non conveniens (G.L.c. 223A §5). In the alternative, the defendants have moved this court to stay these proceedings pending the resolution of a similar suit in Utah.
For the following reasons, the court will allow the defendants’ motion to dismiss.
PROCEDURAL POSTURE
On March 15, 1996, the plaintiffs, Cory Fabiano (“Fabiano”) and SeaChange International, Inc. (“Sea-Change”) filed suit in the Superior Court of the Commonwealth of Massachusetts seeking declaratory relief pursuant to G.L.c. 231A and Mass.R.Civ.P. 57. The plaintiffs filed an amended complaint on April 5, 1996.[1] On April 12, 1996, the defendants Starnet Development, Inc. (“SDI”) and CAM Systems, Inc. (“CAM Systems”) filed suit against Fabiano and Seachange in the United States District Court for the District of Utah, Central Division. On May 29, 1996, the defendants filed this motion to dismiss.
JURISDICTIONAL FACTS
In responding to a motion to dismiss for lack of personal jurisdiction, the plaintiff “has the burden of establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined.” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978); Nicholas Assoc v. Starr, 4 Mass.App.Ct. 91, 93 (1976). Although the defendant does not have the burden of production or persuasion, a court can consider the defendant’s supporting affidavits which cite grounds for dismissal under Rule 12(b)(2). Sprinq v. Geriatric Authority of Holyoke, 394 Mass. 274, 292 (1985).
This court finds the following material jurisdictional facts, viewed in the light most favorable to the plaintiffs, Alioto v. Marnell, 402 Mass. 36, 37 (1988):
1. At the time of the amended complaint, plaintiff Fabiano was living and working in Massachusetts.
2. Between October 1992 and February 1996, Fabiano was employed by Defendant SDI in Utah to develop the Traffic Pro product which SDI had acquired from Mr. Fabiano’s prior employer. Traffic Pro automates certain tracking, ordering and billing tasks for the cable television advertising industry.
3. The plaintiff SeaChange is a Delaware corporation with its principal place of business in Massachusetts.
4. Defendant SDI is a Utah corporation with its principal place of business in Utah and is a wholly-owned subsidiary of Starnet, Inc., a subsidiary of Lenfest Communications, Inc. (“LCI”). SDI supplies certain equipment and services in the cable industry.
5. Defendant CAM Systems is a Delaware corporation with its principal place of business in California and is a wholly-owned subsidiary of LCI established in or about December 1995 to take over development of the Traffic Pro product line from SDI.
6. LCI is a Delaware corporation with its principal place of business in Pennsylvania, and regularly holds itself out under the name of “The Lenfest Group.”
7. Between September 1993 and March 1996, defendants LCI and SDI and SDI’s parent company, Starnet, Inc., solicited business from certain Massachusetts corporations and cable television customers such as Continental Cablevision.
8. Shortly after it was formed in late 1992, SDI made a joint venture proposal concerning the insertion machine business to Digital Equipment Corporation in Maynard, Massachusetts.
9. SDI representatives attended trade shows in which they made sales presentations to Massachusetts corporations.
10. Since approximately 1994, Defendant SDI has maintained a Northeast Regional Sales Representative whose territory includes Massachusetts.
11. In the spring of 1995, defendant SDI contacted plaintiff SeaChange in Massachusetts to propose that Seachange take over SDI. During these months, SDI *114 was involved in negotiations with SeaChange over the proposed sale of SDI to SeaChange.
12. SDI and LCI sent a high-level executive for a meeting in Massachusetts and sent detailed financial and business data to SeaChange in furtherance of the proposed sale.
13. In May 1995, William Styslinger, President and Chief Executive Officer of SeaChange terminated the negotiations in a letter to Gerry Lenfest, President and Chief Executive Officer of LCI.
14. Plaintiff Fabiano’s execution of his employment contract and employment relationship with defendant SDI all occurred within the state of Utah.
15. When Plaintiff Fabiano accepted employment with SeaChange he was domiciled in Utah.
16. On February 23, 1996, The “Lenfest Group” sent a blind carbon copy letter to SeaChange in Massachusetts regarding Plaintiff Fabiano’s employment at SeaChange. In sum, this letter expressed the defendants’ opinion that Mr. Fabiano’s employment at Seachange violated the terms of his noncompetition and nondisclosure requirements and demanded that he cease his employment or face litigation.
17. On March 1, 1996, SDI, CAM Systems and LCI under the rubric of “The Lenfest Group” sent demand letters to SeaChange and Fabiano in Massachusetts insisting that Fabiano’s employment with SeaChange violated the noncompetition and possibly the nondisclosure clauses of his employment agreement and demanded that he cease his employment or face litigation.
18. In mid-March 1996, Mr. Lenfest returned a call to Mr. Styslinger at SeaChange in Massachusetts regarding Mr. Fabiano’s employment and threatened litigation.
DISCUSSION
Before it can assert jurisdiction over the defendants, this court must be satisfied that two legal requirements have been satisfied. First, jurisdiction must exist under the Massachusetts long-arm statute, G.L.c. 223A §3; and, second, the assertion of jurisdiction must comport with the constitutional requirements of due process. Polaroid v. Feely, 889 F.Supp. 21, 25 (1995).
A. LONG-ARM STATUTE
The long-arm statute allows this court to “exercise personal jurisdiction over a person ... as to a cause of action . . . arising from the person’s (a) transacting any business in this commonwealth . . .” G.L.c. 223A §3(a). In order for each of the defendants to fall within subsection (a), therefore, each defendant must have transacted business in Massachusetts, and the plaintiffs’ claims must have arisen from those transactions. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 10 n.17 (1979). The term “arisen from those transactions” means that the present lawsuit would not have arisen “but for” the transaction of business in the Commonwealth. Polaroid, 889 F.Supp at 25; Tatro, 416 Mass. at 771. Whether a particular defendant’s acts constitute transacting any business must be decided on the particular facts involved. Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 156-57 (1978).
In the present case, the plaintiffs have put forth evidence in the form of correspondence and sworn affidavits that the defendants, SDI and LCI (aka “The Lenfest Group”) initiated and engaged in negotiations with SeaChange in Massachusetts over a proposed sale of SDI to SeaChange. This activity consisted of numerous telephone calls, faxes, letters, exchange of business data and at least one lengthy meeting in Massachusetts.
There is also evidence that in late 1992, SDI negotiated with Digital Equipment Corporation over a joint venture proposal in the insertion machine business. Since approximately 1994, SDI has maintained a Northeast Regional Sales Representative who covers Massachusetts, and SDI has solicited business from Massachusetts organizations such as Continental Cablevision in Boston.
The plaintiffs have also shown, and the defendants have conceded, that LCI, under the rubric of “The Lenfest Group,” sent a copy of a cease and desist letter directed at Mr. Fabiano, and a similar letter directed at SeaChange to SeaChange in Massachusetts.
The acts of SDI and LCI, did constitute “transacting business” in the Commonwealth within the broad interpretation afforded that term under the Massachusetts long-arm statute. See e.g., Polaroid, 889 F.Supp. 21.[2]
The evidence that the defendant SDI maintains a Northeast Regional Sales Representative, solicited some Massachusetts corporations and sent the cease and desist letters, is sufficient to qualify as transacting business in Massachusetts for the purposes of the long-arm statute. Tatro, 416 Mass. at 768; Nova Biomedical Corporation v. Moller, 629 F.Supp. 190, 195 (1st Cir. 1980).
Furthermore, the present litigation would not have arisen “but for” the defendants transacting business in the Commonwealth. The plaintiffs clearly filed this declaratory judgment action in response to the defendants’ threats of litigation. The cease and desist letters, coupled with SDI’s prior solicitation of Massachusetts businesses is a sufficient basis for asserting personal jurisdiction under the long-arm statute. See Polaroid, 889 F.Supp. at 26; Nova, 629 F.Supp. at 195. Therefore, the defendants are subject to this court’s jurisdiction under the long-arm statute.
B. DUE PROCESS
Notwithstanding the determination that the defendants’ activities constituted transacting busi *115 ness in the Commonwealth, the court must also find that the defendants’ conduct was such that subj ecting them to suit in Massachusetts satisfies the requirements of the due process clause. Tatro, 416 Mass. at 767. In determining whether the exercise of specific jurisdiction is constitutional, the court must consider three factors: relatedness, purposeful availment (minimum contacts), and reasonableness (traditional notions of fair play). Polaroid, 889 F.Supp. at 26. Jurisdiction is proper if the defendant has minimum contacts with the forum state, such that the lawsuit would not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Further, the minimum contacts must have a basis in an act in which the defendant purposefully availed itself of the “privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253 (1958); Tatro, 416 Mass. at 772. And finally, the plaintiffs claim must arise out of or relate to those forum contacts. Id.
Under the facts of this case, the plaintiffs’ claims do not arise out of or relate to the defendants’ forum contacts. The specific acts which constituted transacting business and gave rise to the present litigation were the fruitless joint venture negotiations in 1992, soliciting Massachusetts corporations at trade shows not necessarily in Massachusetts, the maintenance of a Northeast Regional Sales Representative and the two cease and desist letters. While the threat of litigation triggered the instant case, the factual inquiry in this case focuses on the employment relationship and related employment contract between SDI and Fabiano. All of the relevant transactions to the substantive issues in this case occurred in Utah between Utah domiciliaries. The employment contract involved also requires that the dispute be resolved in accordance with Utah law.
Moreover, the defendants’ acts do not constitute “purposeful availment” of the benefits and privileges of conducting activities in Massachusetts. The facts of this case are analogous to those of the Polaroid case where the court held that subjecting a defendant to jurisdiction in Massachusetts based on advertisements in a national publication with circulation in Massachusetts and a cease and desist letter would offend traditional notions of fair play and substantial justice. Polaroid, 889 F.Supp. at 27. While a cease and desist letter can be the “but for” cause of an action to confer jurisdiction under the long-arm statute, it does not constitute purposeful availment for the purpose of due process analysis. Id.
The plaintiffs allege that this case is similar to the case of Nova Biomedical Corporation v. Moller, in which the United States Court of Appeals for the First Circuit found jurisdiction over the defendant Swiss corporation based on two cease and desist letters pertaining to an alleged patent infringement. 629 F.2d 190. In Nova, however, the court held that the sending of threatening infringement letters into the forum does not automatically suffice to confer jurisdiction over the defendant. Id. at 196. Rather, the court held that the letters were sufficient to confer jurisdiction where the defendant was already conducting or planning to conduct patent-related activity in the forum and the cease and desist letters were designed to reduce competition and thereby improve the defendant’s marketing position in the forum. Id. at 195.
In Nova, the defendant had a cross-licensing agreement with a Massachusetts corporation covering the patent at issue. The agreement required the exchange of quarterly reports, permitted the defendant to inspect the books in Massachusetts and inform the other of suspected patent infringements. Nova, 629 F.2d at 191. The defendant also made numerous sales to other Massachusetts corporations. Id.
The efforts of SDI and LCI in conducting Traffic Pro-related activities in Massachusetts are sparse in comparison to Nova. SDI made one unsuccessful joint venture bid with DEC in 1992, had limited contact with Continental Cablevision and since 1994 has maintained a Regional Sales Representative whose territory includes Massachusetts. Even accepting the fact that SDI employees attended trade shows that made presentations to Massachusetts corporations, the activities do not suffice to correlate to the activities of the defendant corporation in Nova.
Because the defendants did not purposefully avail themselves of Massachusetts law, and because the present relief sought does not arise from the defendants’ forum contacts, it would be unreasonable to force them to defend this suit in Massachusetts.
Plaintiffs argue that the forum selection clause of the employment agreement authorizing suit in a forum where Mr. Fabiano resides or any alleged breach occurs satisfies the due process requirements. A forum selection clause is valid and enforceable unless it is shown that enforcement would be unreasonable. Jacobsen v. Mailboxes Etc., U.S.A., Inc., 419 Mass. 572, 574-75 (1995). This action seeks a declaration that SDI breached the terms of the employment agreement making the restrictions on Mr. Fabiano unenforceable. Even if this court interprets the forum selection clause to confer universal jurisdiction for an action seeking to enforce the agreement (which this court does not do), the present action does not seek such relief. Therefore, this case does not fall within that category of cases which would subject SDI to jurisdiction wherever Mr. Fabiano chose to take up residence. In addition, where the choice of law clause in the agreement selects Utah law, the agreement was executed in Utah between two Utah domiciliaries, and Mr. Fabiano accepted employment with SeaChange while in Utah, the use of that clause to satisfy due process requirement would be unreasonable.
*116 The activities of LCI and SDI and CAM Systems in the Commonwealth do not constitute purposeful availment nor does the substance of the present action arise from the defendants’ forum contacts. Therefore, the defendants’ Massachusetts contacts do not satisfy the due process standard for personal jurisdiction under the Massachusetts long-arm statute.
C. RULES 12(B)(7) AND 19(B) AND FORUM NON CONVENIENS
Having determined that this court lacks personal jurisdiction over the defendants in this declaratory judgment action, there is no need to address the defendants’ remaining arguments.
ORDER
For the above reasons, it is hereby ORDERED that the defendants’ motion to dismiss is ALLOWED.

 In both their original and amended complaints, the plaintiffs seek a ruling that the noncompetition and nondisclosure covenants of the employment contract between Mr. Fabiano and SDI are unenforceable because SDI materially breached the contract thus excusing Mr. Fabiano from performance: and, that the covenants are an unreasonable restraint on Mr. Fabiano’s right to earn a living.

 Plaintiffs assert that CAM Systems is subject to personal jurisdiction if LCI and SDI are subject to personal jurisdiction where LCI’s involvement and control of the wholly-owned subsidiary is so pervasive as to warrant disregarding the distinctions between the corporate entities. See Willis v. American Permac, Inc., 541 F.Supp. 118 (D.Mass. 1982). This court finds that the corporate structure of these defendants requires a finding that CAM Systems, LCI and SDI are all part of the same efforts at transacting business in Massachusetts.