## UNION WADDING COMPANY

### v.

### WHITE SWAN, LTD.

### Civ. A. No. 94–0137ML.

United States District Court,
D. Rhode Island.

Oct. 5, 1994.

Barlow & Barlow, Ltd., Herbert B. Barlow, Jr., Cranston, RI, for plaintiff.

Hinckley, Allen & Snyder by William R. Grimm, Providence, RI, for defendant.

### ORDER

LISI, District Judge.

The Findings and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on **June 1, 1994** in the above-

---

1. Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

2. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).

captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1).

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Before me is defendant's, White Swan, Ltd. ("White Swan"), motion to dismiss for lack of *in personam* jurisdiction pursuant to F.R.Civ.P. 12(b)(2), motion to dismiss for improper venue pursuant to F.R.Civ.P. 12(b)(3) or alternatively, to transfer this matter to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404(a). This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B) and Local Rule of Court 32(c). For the following reasons, I recommend defendant's motion to dismiss for lack of *in personam* jurisdiction be granted. Because I find this motion controlling, I do not address the remaining motions.

### Facts

Plaintiff, Union Wadding Company ("UWC"), is a Rhode Island corporation doing business in Pawtucket, Rhode Island. Defendant, White Swan, is an Oregon corporation with its principal and only place of business in Beaverton, Oregon. White Swan markets a line of garden-related products including flower seeds, garden faucets, sundials and bird baths through representatives, distributors and by mail order. All White Swan products are assembled, packaged and shipped from Oregon. All of White Swan's officers, employees and business records are in Oregon. White Swan maintains no presence in the State of Rhode Island such as employees, telephone numbers, offices or assets. During the years 1991 to April 1, 1994, White Swan sold[1] products in Rhode Island and total sales were as follows:

### Total Sales in Rhode Island

| 1991 | | $1,271.40 |
|---|---|---|
| 1992 | | 281.40 |
| 1993 | | 210.00 |
| 1994 | (April) | 230.00 |

During this time frame, White Swan's Rhode Island sales represented 0.013 percent of its total sales amounting to $14,800,600.

UWC and White Swan sell a similar product known as a seeded planting mat. This consists of flower seeds embedded in a roll of material which is then buried in topsoil and watered for germination purposes. If all goes well, the consumer enjoys a lush and colorful flower garden at least until the first heavy frost. UWC sells its products under the name EVERBLOOMING including RAINBOW FLOWER GARDEN, OLD ENGLISH HERB GARDEN, FLOWER GARDEN and FLOWERS OF VAN GOGH.[2] The RAINBOW FLOWER GARDEN is also labelled in smaller capital letters TO ATTRACT BUTTERFLIES AND HUMMINGBIRDS. White Swan is the proprietor of trademarks for flower seeds such as HUMMINGBIRD GARDEN (U.S. Registration No. 1,439,408) and FLOWERS OF VAN GOGH (U.S. Registration No. 1,749,542). An application for registration of BUTTERFLY GARDEN is pending.

On August 23, 1993, White Swan's attorneys, located in Portland, Oregon, wrote to UWC advising as to White Swan's trademarks and requesting UWC spray brush killer on its use of VAN GOGH, HUMMINGBIRDS and BUTTERFLIES, as such use infringed upon White Swan's trademarks. The attorneys invited UWC to call to resolve this matter "in an amicable manner." On

1. We are not informed as to whether such sales were by representatives, distributors and/or mail order.

2. UWC advises in its advertising that Van Gogh did not cultivate flowers but did advise his sister as to what flowers and colors she should plant. In light of the recent sales price of Van Gogh's canvas "Sunflowers", we may conclude that it is far more profitable to paint flowers than grow them.

November 9, 1993, UWC's attorney respond-ed by agreeing to prune the use of FLOW-ERS OF VAN GOGH but denied that the use of BUTTERFLY GARDEN and HUM-MINGBIRD GARDEN infringed any trade-mark.

UWC's response only fertilized this contro-versy, as on January 4, 1994, White Swan's attorneys again objected to UWC's use of BUTTERFLIES, HUMMINGBIRDS and VAN GOGH in upper case letters.

On January 12, 1994, UWC's attorneys responded by identifying some unwanted in-sects in what White Swan believed was a perfectly cultivated position. On January 24, 1994, White Swan identified weeds aggres-sively growing in UWC's patch and threaten-ing thunderstorms in UWC's future. On February 10, 1994, UWC's attorneys re-sponded by requesting White Swan's attor-neys send some sample seeds (citations to case law) to see if they would sprout in UWC's garden. On February 17, 1994, White Swan's attorneys sent one sample seed and a promise to investigate the fertility of a court in order to resolve this matter.

UWC then began to till the soil and plant-ed this seed (complaint) for declaratory judg-ment as to whether its use of the words HUMMINGBIRDS, BUTTERFLY and VAN GOGH infringe upon White Swan's trademarks. UWC also wishes to harvest "its full costs of this action together with attorney's fees." UWC further seeks to add additional strength by staking its arguments via affidavits showing White Swan unsuccess-fully attempted to negotiate a contract with a Rhode Island manufacturer of bird and but-terfly feeders in 1992 and that in 1994 some White Swan products other than the seeded planting mats were being sold at two Rhode Island stores.

White Swan objects and seeks a drought so as to cause UWC's complaint to whither and die on the vine. Specifically, White Swan moves to dismiss for lack of personal jurisdiction over it and improper venue or alternatively, to plant this garden in the Dis-trict of Oregon. The Court now must hoe this long row.

### Discussion

#### A. *Jurisdiction*

Plaintiff alleges jurisdiction of this court is "based upon the Trademark Laws, 15 U.S.C. 1051 et seq. and is based upon diversity of citizenship, pursuant to 28 U.S.C. 1332(a)." (Complaint, ¶ 3.) Plaintiff seeks a declarato-ry judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that use of the words BUTTER-FLY, HUMMINGBIRDS and VAN GOGH "do not violate any trademark rights of de-fendant or any Federal laws." (Complaint, ¶ 1 at p. 3.)

28 U.S.C. § 1331 confers original jurisdic-tion on this court "of all civil actions arising under the Constitution, laws, or treaties of the United States." Clearly, 28 U.S.C. § 1331 is the basis for jurisdiction in this case.

Diversity jurisdiction as alleged by the plaintiff is proper when the matter in contro-versy exceeds the sum of $50,000 exclusive of interest and costs and is between citizens of different States. 28 U.S.C. § 1332(a)(1). Here, although the parties are citizens of different states, the controversy does not exceed the sum of $50,000, as no money damages are sought. Therefore, diversity jurisdiction is not available.

#### B. *In Personam Jurisdiction— F.R.Civ.P. 12(b)(2).*

The burden of establishing *in per-sonam* jurisdiction rests with the plaintiff. *Donatelli v. National Hockey League,* 893 F.2d 459 (1st Cir.1990). The law of the forum governs the question of personal juris-diction. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983). The Rhode Island longarm statute, R.I.G.L. § 9–5–33,[3] autho-rizes jurisdiction to the fullest extent permit-

---

**3.** The Rhode Island long arm statute provides: Every foreign corporation, every individual not a resident of this state ... and every partner-ship or association, composed of any person or persons, not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdic-tion of the state of Rhode Island ... in every case not contrary to the provisions of the con-stitution or laws of the United States. R.I.G.L. § 9–5–33.

ted by the United States constitution. *Almeida v. Radovsky,* 506 A.2d 1373, 1374 (R.I. 1986).

This Court has previously addressed what must be shown in order for it to exercise personal jurisdiction over a non-resident defendant. *Thompson Trading Ltd. v. Allied Lyons PLC,* 123 F.R.D. 417 (D.R.I.1989); *Levinger v. Matthew Stuart and Co., Inc.,* 676 F.Supp. 437 (D.R.I.1988). In *Levinger,* the Court noted:

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution. Since the Supreme Court of Rhode Island has held that Rhode Island's long-arm statute reaches to the full breadth of the Fourteenth Amendment, one need only examine the foundation for the second criterion listed above. (citations omitted.)

■ In a due process analysis, the finding of minimum contacts is essential. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The sufficiency of minimal contacts to support an exercise of personal jurisdiction cannot be determined by any fixed formula or rule but must rest on a consideration of what is fair and reasonable in the circumstances of each particular case. *Sandstrom v. Chemlawn Corp.,* 904 F.2d 83 (1st Cir.1990).

> Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158.

\*    \*    \*    \*    \*    \*

Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

> But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as
>
> those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. (Citations omitted.) *Id.* at 319, 66 S.Ct. at 159.

The Supreme Court offered several methods to determine whether the necessary minimum contacts are present. If a non-resident defendant has conducted "continuous and systematic" activities in the forum state which "give rise to the liabilities sued," then jurisdiction unquestionably exists. *Id.* at 317, 66 S.Ct. at 159. If a non-resident defendant has only a casual presence or only a single act, then there can be no jurisdiction in a suit not arising out of those activities. *Id.* If a non-resident defendant conducts continuous, systematic and substantial activities within a forum then it may be sued in that forum even for causes of action unrelated to those activities. *Id.* at 318, 66 S.Ct. at 159. Lastly, if the non-resident defendant conducts a single or occasional act of a certain nature and quality, that act may be deemed sufficient to subject such defendant to jurisdiction in suits arising out of that activity. *Id.*

These methods of determining the necessary minimal contacts have been categorized as two types of jurisdiction: *general and specific in personam* jurisdiction. *General in personam* jurisdiction is said to exist where a defendant has such continuous and systematic contacts with the forum that bringing him into court on any matter, whether arising out of those contacts or not, does not offend the *International Shoe* due

process standard. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 215 (1st Cir.1984). *Specific in personam* jurisdiction is said to exist if the suit arises out of or relates to the defendant's contacts with the forum state. *Id.* If so, then *specific in personam* jurisdiction may be found based on the relationship among the defendant, the forum, and the litigation. *Id.*

At oral argument, UWC admitted it was relying on specific *in personam* jurisdiction as to White Swan. Consequently I will look to the facts in this matter to determine if there is specific *in personam* jurisdiction over White Swan.

■ Contact between these parties commenced on August 23, 1993 when White Swan's Oregon attorneys wrote to UWC concerning alleged trademark infringements. What then transpired was a series of correspondence between counsel for these parties which culminated in the filing of this complaint for declaratory judgment. It is clear that the sending of these letters to UWC and its counsel in Rhode Island cannot, by itself, form the basis for specific *in personam* jurisdiction. *Nova Biomedical Corp. v. Moller,* 629 F.2d 190 (1st Cir.1980); *KVH Industries, Inc. v. Moore,* 789 F.Supp. 69 (D.R.I.1992). No representative of White Swan visited Rhode Island to negotiate a settlement of the alleged infringement or made any other contact with Rhode Island other than correspondence. Here there is no tort, insurance policy or contract, and therefore, the court must look to the whole transaction. *Starline Optical Corp. v. Caldwell,* 598 F.Supp. 1023, 1026 (D.N.J.1984).

This transaction involves certain trademarks issued in Washington, D.C. or an application pending there. This transaction does not involve Rhode Island in any way. Then, there are sales of UWC's product, EVERBLOOMING flower gardens, which *might* infringe upon White Swan's trademarks, but even plaintiff admits it "is unaware of any actual consumer confusion caused by its advertisements and packaging." (Complaint, ¶ 8.) Consequently, the court is unaware of any event in Rhode Island giving rise to confusion as to any trademark violation between these parties. Therefore, there is insufficient contacts "among the defendant, the forum and the litigation" to exercise specific *in personam* jurisdiction over White Swan. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872.

■ Even if UWC was urging general *in personam* jurisdiction over White Swan, there would be an insufficient basis for such jurisdiction.

> The outcome of a search for general jurisdiction depends largely on whether a corporate party carried on "continuous and systematic" activities within the forum sufficient to justify requiring it to answer there to a claim unrelated to its in-forum presence.

*Sandstrom v. Chemlawn, Corp.,* 904 F.2d at 88. Here UWC offers evidence that in 1992, White Swan negotiated with a Rhode Island resident for purchase of bird and butterfly feeders and that in 1994 White Swan products were being sold in two Rhode Island stores. Indeed, White Swan admits to sales in Rhode Island but such sales are certainly de minimus. The contract negotiations for the feeders were conducted by correspondence and telephone. The draft agreement sent to Rhode Island by White Swan provided for application of Oregon law and that any litigation between the parties would be brought in Oregon. These activities by White Swan are not substantial, continuous and systematic and do not constitute a sufficient basis for assertion of general *in personam* jurisdiction over White Swan. The contacts that must be reviewed and considered here are the contacts between White Swan and Rhode Island, not Rhode Island residents. *Russo v. Sea World of Florida, Inc.,* 709 F.Supp. 39, 42 (D.R.I.1989). There are none as White Swan has shown by affidavit from its president. (Saltzman affidavit). UWC has not shown otherwise.

UWC urges this court to follow the ruling in *Sidco Industries, Inc. v. Wimar Tahoe Corp.,* 768 F.Supp. 1343 (D.Or.1991) wherein the court held that a Nevada corporation had sufficient contacts with the State of Oregon for the exercise of limited personal jurisdic-

tion over it. I have read the *Sidco* decision, and the facts are substantially different than those in the instant case. In *Sidco*, the defendant, Wimar, was a Nevada corporation which operated a casino/resort in Lake Tahoe, Nevada under the name Lake Tahoe Horizon Casino/Resort. Sidco was an Oregon corporation and had a federal service mark registration for Horizon Motor Inn with design. Wimar advertised in a travel publication which was circulated in Oregon and distributed to every travel agency in Oregon and to every advertiser in the publication, including every Oregon advertiser. Wimar also advertised its casino/resort through direct mail brochures which were mailed to almost all travel agents in Oregon. The *Sidco* court declined to exercise general jurisdiction over Wimar because Wimar's contacts (advertising materials and publications) were not continuous and systematic. *Id.* at 1347. However, the *Sidco* court did find Wimar's contacts to be sufficient forum-related activities to subject Wimar to specific jurisdiction since the confusion allegedly caused by the registration infringement occurred in Oregon. *Id.* at 1346–1347. Since Wimar's advertisements allegedly infringed on Sidco's registration, there was sufficient contact in Oregon giving rise to this litigation.

In this case, White Swan does not have the contacts with Rhode Island that Wimar had with Oregon, and there is no showing of any confusion in Rhode Island giving rise to a trademark violation. Plaintiff openly admits it knows of no such confusion. The *Sidco* decision is inapposite.

I am satisfied that UWC has failed to carry its burden to establish *in personam* jurisdiction over White Swan.

### Conclusion

For the reasons stated, I recommend defendant's motion to dismiss for lack of *in personam* jurisdiction be granted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[4] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[5]

June 1, 1994.

---

**4.** Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

**5.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).