UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Primal Hardwere, LLC
      v.

Primal Wear, Inc.

Civil No. 21-cv-0232-JL
Opinion No. 2021 DNH 119

## MEMORANDUM ORDER

The motion before the court centers on two issues – whether the court has personal jurisdiction over the out-of-state defendant in an action for declaratory judgment of trademark non-infringement and non-dilution, and whether a transfer of venue is appropriate, based on the plaintiff's purported bad faith and misleading conduct in filing the suit. The plaintiff, Primal Hardwere, is a New Hampshire limited liability company that manufactures and sells sex toys and related items throughout the United States. The plaintiff displays its name, "PRIMAL HARDWERE," prominently on its logo, which it places on its products, including its t-shirts. The defendant, Primal Wear, is a Colorado corporation that manufactures and sells cycling apparel across the United States. It uses the registered trademarks PRIMAL® and PRIMAL WEAR® in connection with clothing, sports apparel, and online retail services featuring apparel and accessories. Primal Wear sold some of its products in New Hampshire in Fiscal Year 2020, and it markets to New Hampshire residents who visit its website by advertising its products on their social media feeds.

The defendant mailed a cease-and-desist letter to the plaintiff in January 2021, requesting that the plaintiff stop using the words "PRIMAL HARDWERE" on its t-shirts,

and asserting that this infringes the defendant's registered trademarks. Further correspondence between the parties ensued over email and phone. The plaintiff proposed a compromise, which Primal Wear did not accept. One month later, in April 2021, the plaintiff filed a declaratory judgment action in this court, seeking a determination that its use of the PRIMAL HARDWERE™ word mark on its apparel does not constitute infringement or dilution of the defendant's trademarks, under the Lanham Act, New Hampshire law, and common law. Subsequently, in April 2021 Primal Wear filed a patent infringement action against the plaintiff in the District of Colorado. The following month, Primal Wear filed this motion to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, to transfer the case to the District of Colorado under 28 U.S.C. § 1404(a). The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark).

In this motion, Primal Wear argues that the court cannot assert specific personal jurisdiction over it, based on its contacts within the state. Specifically, Primal Wear asserts that its communications with the plaintiff regarding trademark infringement cannot form the basis for personal jurisdiction. Primal Wear further argues that the declaratory judgment action does not relate to, or arise out of, Primal Wear's remaining contacts in the state—its online sales and marketing activities—as required to satisfy the constitutional standard for specific personal jurisdiction. Alternatively, Primal Wear requests that the court transfer the case to the District of Colorado, as, according to Primal Wear, the plaintiff's declaratory judgment action is an improper, anticipatory

2

lawsuit, and the plaintiff should not get the benefit of its chosen forum merely because it filed its action before the defendant did.

After reviewing the parties' submissions and holding oral argument, the court grants Primal Wear's motion to dismiss. The plaintiff did not file an improper, anticipatory suit, but the court must nevertheless dismiss the case because it lacks personal jurisdiction over Primal Wear as to this action.

## I.      Applicable legal standards

### A.  Motion to Transfer Venue

"Under [28 U.S.C.] § 1404(a), a district court may transfer any civil action to any other district where it may have been brought '[f]or the convenience of parties and witnesses, in the interest of justice.'" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir.2000) (quoting 28 U.S.C. § 1404(a)). "In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." Id. at 11. "[T]he burden of proof rest[s] with the party seeking to transfer[, and] there is a 'strong presumption in favor of the plaintiff's choice of forum.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009) (quoting Coady, 223 F.3d at 11). "When ruling on a defendant's motion to dismiss for improper venue, the court must treat all facts pled in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Johnson v. Gen. Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236, 239 (D.N.H. Dec. 18, 2009) (internal citations omitted).

3

**B. Motion to dismiss for lack of personal jurisdiction**

When a defendant challenges personal jurisdiction, "the plaintiff has the burden of showing that jurisdiction exists." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) (quoting Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 (1st Cir.1986)). Primal Hardwere must meet this burden under one of a "trio of standards" which the court selects. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing," as is the parties' mutual preference here, "the 'prima facie' standard governs its determination." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (internal citation omitted).

Under this standard, the court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit, 967 F.2d at 675. To satisfy the prima facie standard, the "plaintiff must go beyond the pleadings and make affirmative proof." Chlebda v. H. E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). The court, in turn, "take[s] specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim . . . ." Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The court also "must consider undisputed facts proffered by the defendant that bear on jurisdiction." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).

4

## II.     Background

The defendant Primal Wear is a Colorado corporation that manufactures and sells cycling apparel, including custom cycling apparel, in connection with the trademarks PRIMAL® and PRIMAL WEAR®.[1]  Primal Wear's logo design appears as seen below:[2]



Primal Wear sells its products on its website, https://www.primalwear.com, and on retail websites including eBay.com and Amazon.com.  According to Primal Wear, it earned roughly 0.1% of its annual sales revenue, or $14,500, from New Hampshire sales in Fiscal Year 2020.[3]  Additionally, Primal Wear asserts that less than one percent of its total custom orders during Fiscal Year 2020 (seven custom orders) came from New Hampshire customers.[4]  Primal Wear also "directly target[s] New Hampshire residents in an online marketing campaign whereby" it identifies visitors to its website from New Hampshire and "send[s] frequent advertisements to the social media feeds of those New Hampshire residents."[5]

---

[1] Complaint (doc. no. 1) at ¶¶ 14, 20.

[2] Id. at ¶ 14.

[3] See Def.'s Mot. to Dismiss (doc. no. 7-1) at 10; doc. no. 7-6 at ¶¶ 3-4.

[4] See id.

[5] Complaint (doc. no. 1) at ¶ 5.

In 2008 and 2015, respectively, Primal Wear registered the word mark PRIMAL®

for use in connection with "[c]lothing, headwear[,] and sportswear . . ." in Class 25,"[6] and

for "on-line retail services featuring apparel and accessories, in class 35."[7] In 2012,

Primal Wear registered the word mark PRIMAL WEAR® for use in connection with

"athletic apparel . . . in Class 25."[8]

The plaintiff Primal Hardwere is a New Hampshire LLC that manufactures and

sells "sex toys and other sex-themed novelty items" to customers in the United States.[9]

Primal Hardwere has been promoting and selling its products under the PRIMAL

HARDWERE™ word mark since January 2013.[10] The word mark generally appears on

the plaintiff's products in the logo design pictured below.[11] Based on the logo, the

"WERE" in "HARDWERE" is evidently a reference to a werewolf.

---

[6] Doc. no. 7-2 at 1.

[7] Doc. no. 7-4 at 1.

[8] Doc. no. 7-3 at 1.

[9] Complaint (doc. no. 1) at ¶ 7.

[10] Id. at ¶ 8.

[11] Id. at ¶ 9.



Primal Hardwere sells its products on its website,

https://www.primalhardwere.com.  It promotes its products online and by selling and

giving away t-shirts and apparel with the PRIMAL HARDWERE™ word mark and logo.

On January 8, 2021, counsel for Primal Wear, Attorney Tamara Pester, mailed a

letter regarding "trademark issues" to Primal Hardwere's general business counsel.[12]  In

the letter, Attorney Pester expressed concern over the plaintiff's use of it company name

in connection with apparel.  Attorney Pester explained that Primal Wear owns "rights in

the marks PRIMAL and PRIMAL WEAR" in connection with clothing, online apparel

sales, and the design and customization of apparel.[13]  She then "request[ed]" that the

plaintiff "cease using the words PRIMAL HARDWERE in connection with clothing

items[,]" and she asked the plaintiff to respond by January 20, 2021, confirming that the

plaintiff would cease this activity by March 1, 2021, and "dispose of any apparel bearing

the word PRIMAL."[14]  Attorney Pester also noted that Primal Wear "takes its intellectual

---

[12] Jan. 8, 2021 Pester letter (doc. no. 1-1) at 2.

[13] Id.

[14] Id.

property rights very seriously, and has taken action against others in Federal Court as well as before the Trademark Trial and Appeal Board."[15]

Primal Hardwere's counsel responded over email on January 21, 2021, informing Attorney Pester that the plaintiff had removed "the objectionable t-shirts from sale on the website" and planned to dispose of the remaining stock.[16]  Counsel also wrote that the plaintiff intended to remove the wording "PRIMAL HARDWERE" from the logo on the t-shirts, and instead print the website URL, https://www.primalhardwere.com, "discreetly underneath the logo or perhaps on the sleeve."[17]  In this way, counsel explained, "[t]he [Primal Hardwere] lettering would not constitute a primary feature of the logo design and is sufficiently distinct so as to not create any risk of confusion between the companies and their product offerings."[18]

Attorney Pester responded via email a few weeks later, on February 18, 2021.  She referenced a discussion with Primal Hardwere's counsel from the previous day, concerning a plan to "re-nam[e] the 'Apparel' category on [Primal Hardwere's] website to something else, and continu[e] to sell a logo'd item there[.]"[19]  Attorney Pester wrote that Primal Wear rejected the plan and "is adamant that sales of traditional apparel be

---

[15] Id.

[16] Jan. 21, 2021 Plaintiff's counsel email (doc. no. 1-2) at 2.

[17] Id.

[18] Id.

[19] Feb. 18, 2021 Pester email (doc. no. 1-3) at 2.

completely removed from the Primal Hardwere site, particularly because [Primal Wear] see[s] continued sales of apparel there as a 'bridge' to the adult novelty market."[20] She reiterated that Primal Wear "believe[s] [the plaintiff] is currently infringing" its registered PRIMAL trademark, and that Primal Wear is "prepared" to "escalat[e] matters to Federal court . . . in this instance if necessary."[21] Attorney Pester concluded the email with a request that the plaintiff inform her if it "wishes to resolve this matter, or will continue to insist on online sales of the single T-shirt."[22]

One month later, on March 18, 2021, Primal Hardwere filed a declaratory judgment action in this court, seeking a determination that its "use of the PRIMAL HARDWERE™ word mark and logo in connection with its online retail services featuring apparel and accessories does not constitute" infringement or dilution "of Defendant's trademarks" PRIMAL® and PRIMAL WEAR®, under the Lanham Act, New Hampshire law, and common law.[23] Following that, on April 8, 2021, Primal Wear filed a trademark infringement suit against Primal Hardwere in the District of Colorado.[24] The next month, Primal Wear filed the instant motion to dismiss the plaintiff's action or, in the alternative, to transfer venue to the District of Colorado.

---

[20] Id.

[21] Id.

[22] Id.

[23] Complaint (doc. no. 1) at 12-28.

[24] See doc. no 7-5 at 2.

### III. Analysis

#### A. Motion to transfer venue to the District of Colorado

If the court does not dismiss this action for lack of personal jurisdiction, Primal Wear requests that the court transfer this action to the District of Colorado, where Primal Wear filed a patent infringement suit against Primal Hardwere in April 2021, a month after Primal Hardwere filed its declaratory judgment action.[25] The parties' dispute turns, in large part, on the first-filed rule, which provides that, "[w]here identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (internal citation omitted). Primal Wear insists that Primal Hardwere filed an impermissible, anticipatory lawsuit in order to gain a tactical advantage, thereby triggering the exceptions to the first-filed rule.

Courts have recognized exceptions to the first-filed rule "when justice and expediency requires . . . ." Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995). "Where, for example, a plaintiff (1) misleads the defendant into foregoing litigation in order to negotiate a settlement and then files suit or (2) reacts to a defendant's

---

[25] Because the court concludes (as discussed further below) that the plaintiff's action must be dismissed for lack of personal jurisdiction, the court need not determine whether a transfer of venue is appropriate. Nevertheless, the court takes this opportunity to weigh in on the matter, particularly on the defendant's inaccurate characterizations of the plaintiff's conduct in filing this action.

notice of imminent filing by 'literally sprinting to the courthouse the same day,' the first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum[,] and deference to a later-filed action may be appropriate." Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (citing cases); see also Falafel Republic Mediterranean Foods  Inc. v. Tarazi Specialty Foods, Inc., No. 12-105501, 2012 WL 12941889, at *6 (D. Mass. Sept. 28, 2012) (refusing to hear a first-filed declaratory judgment suit where the plaintiff "was put on notice that [the defendant] was contemplating imminent litigation, and [the plaintiff] misled [the defendant] into waiting for a response from its attorney [and] [t]hen filed a lawsuit seeking . . . declaratory relief."). On the other hand, the first-filed rule should be honored "where two sophisticated parties are negotiating at arm's length," and one party files a declaratory judgment action "in the absence of any proof of misrepresentation or bad faith . . . ." Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co., 402 F.Supp.2d 343, 350 (D. Mass. Nov. 18, 2005); see also Island Oasis Frozen Cocktail Co. v. NUCO USA LLC, No. CV 11-10104, 2011 WL 13254079, at *3 (D. Mass. June 2, 2011) (refusing to transfer a first-filed declaratory judgment action where "[t]here is no evidence that [the plaintiff] intentionally misled [the defendant] to keep it from filing suit in California or that [the plaintiff] raced to the courthouse immediately after receiving notice that [the defendant] intended to file suit.").

In order to create the appearance that the exceptions to the first-filed rule apply, Primal Wear avers that Primal Hardwere "singlehandedly decided that discussions were over and surreptitiously filed" the declaratory judgment action, in a "preemptive strike"

11

meant to "provide [the plaintiff] with a tactical advantage over Primal Wear.[26]  Primal Wear's characterizations of the plaintiff's conduct are unfounded.  "Treat[ing] all facts pled in the complaint as true and draw[ing] all reasonable inferences in the plaintiff's favor," the court finds no evidence that Primal Hardwere acted in bad faith, engaged in misleading behavior, or preemptively filed suit.  See Johnson, 675 F. Supp. at 239.

Rather, the plaintiff engaged in good-faith negotiations to resolve the defendant's concerns about trademark infringement.  The plaintiff offered to remove the "Primal Hardwere" lettering from its t-shirts, place its website name "discreetly" on the t-shirt instead, and dispense with the remaining, objectionable t-shirts.  Primal Wear rejected this proposal, and, one month later, the plaintiff filed this declaratory judgment suit.  Though Primal Wear's counsel mentioned the possibility of litigation in her correspondence with the plaintiff, there was no reason for the plaintiff to believe that the litigation was imminent, such that the plaintiff can be seen as racing to beat the defendant to the courthouse after the month passed.

The defendant asserts that it waited to file suit because it "justifiably relie[d] on ongoing negotiations with the plaintiff," and, by honoring the first-filed rule in this context, the court would discourage good-faith negotiations.[27]  The court disagrees.  The plaintiff was under no obligation to continue negotiations with Primal Wear until they reached a conclusion by Primal Wear's standards; nor was the plaintiff required to

---

[26] Def.'s Mot to Dismiss (doc. no. 7-1) at 5-6.

[27] Def.'s Reply (doc. no. 9) at 2.

announce its intention to file suit. Either party could have filed suit at any point once their dispute began, and the plaintiff's actions in this regard were not accompanied by deception or bad faith. Rather, the negotiations between Primal Wear and Primal Hardwere proceeded in good faith, and once the parties reached an impasse (based on the plaintiff's judgment), the plaintiff exercised its right to seek relief in court. Contrary to Primal Wear's contention, the exceptions to the first-filed rule do not apply. The court need not further consider or decide whether a transfer of venue is appropriate, however, as it disposes of the case for lack of personal jurisdiction.

### B. Personal jurisdiction

Primal Wear moves to dismiss this suit on the ground that the court lacks personal jurisdiction over it. The court's "exercise of jurisdiction must be authorized by state statute and must comply with the Constitution." Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). Since New Hampshire's long-arm statute "reaches to the full extent that the Constitution allows," the jurisdictional analysis "proceeds directly to the constitutional inquiry" under the Fourteenth Amendment's Due Process Clause. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999). Under the Due Process standard, Primal Wear must "have sufficient minimum contacts with the state, such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"There are two means of establishing jurisdiction over a defendant's person available under the Fourteenth Amendment: specific and general jurisdiction." Astro-

13

Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). General jurisdiction exists when a "corporation's general business contacts with the forum are sufficiently continuous and systematic as to render it essentially at home in the forum State." Kuan Chen, 956 F.3d at 57 (internal quotation omitted). Primal Hardwere makes no claim that this court has general jurisdiction over Primal Wear.

In this case, Primal Hardwere argues that the court has specific personal jurisdiction over Primal Wear. "For specific jurisdiction, the plaintiff's claim 'must be related to the defendant's contacts.'" Id. (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)). The Due Process clause's 'minimum contacts' requirement for specific personal jurisdiction is broken down into three elements:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable.

PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). Below, the court begins the Due Process analysis with the relatedness element and considers each of Primal Wear's in-state contacts in turn, starting with the cease-and-desist letter and related phone and email contacts.

In Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998), the Court of Appeals for the Federal Circuit considered the plaintiff's argument that its patent declaratory judgment action arose out of the cease-and-desist

letters sent by the out-of-state defendant into the forum, and the Court concluded that the argument had "at least some merit." Id. at 1359. The Court reasoned that a patent declaratory judgment action complains of "wrongful restraint[s] on the free exploitation of non-infringing goods," and a cease-and-desist letter may be one such wrongful restraint. Id. But, the Court continued, "without more, such letters are not sufficient to satisfy the requirements of Due Process in declaratory judgment actions[,] . . . even though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts) . . . ." Id. at 1360. The Court explained that a contrary holding would offend the "[p]rinciples of fair play and substantial justice," which "afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." Id. at 1360-61; see also Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1333 (Fed. Cir. 2008) ("Based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction . . . because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice" (internal quotation omitted)).

The First Circuit Court of Appeals expressed the same position in Nova Biomedical Corp. v. Moller, 629 F.2d 190 (1st Cir. 1980), when considering whether a district court in Massachusetts can assert personal jurisdiction over an out-of-state defendant in an action for a declaratory judgment of non-infringement and invalidity of the defendant's patent. Id. at 191. The First Circuit Court of Appeals expressly "d[id] not hold . . . that sending threatening infringement letters into the forum district suffices

15

to succumb to that district's jurisdiction," and further stated "that the mailing of an infringement notice alone has rarely been deemed sufficient to satisfy the constitutional standard" for personal jurisdiction. Id. at 196.

Consistent with this, district courts in the First Circuit have repeatedly held that cease-and-desist letters and related communications do not, on their own, establish personal jurisdiction over an out-of-state defendant in declaratory judgment actions concerning trademarks and patents. See, e.g., Multi Tech. Indus., LLC v. Huhtamaki Forchheim, No. CIV. 05-CV-403-SM, 2007 WL 433368, at *3 (D.N.H. Feb. 7, 2007) (McCauliffe, J.) (holding that cease-and-desist letters sent into the forum by the out-of-state defendant patentee do not establish specific personal jurisdiction over the defendant under the Due Process Clause (citing Red Wing, 148 F.3d at 1360)); Polaroid Corp. v. Feely, 889 F. Supp. 21, 26-27 (D. Mass. June 22, 1995) (same and citing supporting cases); Union Wadding Co. v. White Swan, Ltd., 866 F. Supp. 71, 75 (D.R.I. Oct. 5, 1994) ("the sending of these letters [concerning alleged trademark infringement] to [the plaintiff] and its counsel in [the forum] cannot, by itself, form the basis for specific in personam jurisdiction" (internal citation omitted)). Accordingly, the court cannot assert personal jurisdiction over Primal Wear based on its letter, email(s), and phone call(s) to with Primal Hardwere pertaining to trademark infringement and associated litigation (even though they alone may provide the required minimum contacts under the Due Process Clause). The court continues its analysis of the relatedness element, then, turning its attention to Primal Wear's remaining in-state contacts.

16

Primal Wear argues that its other contacts in the forum—sales to New Hampshire residents and advertisements targeted at the social media accounts of New Hampshire residents who visited Primal Wear's website—do not provide a basis for specific personal jurisdiction because the plaintiff's declaratory judgment claims do not arise out of or relate to these contacts, as required to satisfy the relatedness element of the Due Process standard. The court agrees.

The Court of Appeals for the Federal Circuit provided guidance on this issue in Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324 (Fed. Cir. 2008), in which an alleged patent infringer brought a declaratory judgment claim of non-infringement against an out-of-state defendant. The Court held that the defendant's direct and indirect sale of its goods into the forum "is not sufficient to establish personal jurisdiction in a declaratory judgment suit." Id. at 1338. The Court's holding turned, in relevant part, on the relatedness element of the Due Process standard. The Court stated that "in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, . . . the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods . . . ." Id. at 1332 (internal quotation and modification omitted). Thus, the declaratory judgment claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit[,]" such as "exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee," and not out of "the making, using, offering to sell, selling, or importing of arguably infringing products into the forum[.]" Id.

17

Though <u>Avocent</u> concerned patent non-infringement, several district courts have applied its holding and reasoning to the trademark context. <u>See</u>, <u>e.g.</u>, <u>J.M. Smucker Co. v. Promotion in Motion, Inc.</u>, 420 F. Supp. 3d 646, 657 (N.D. Ohio Nov. 7, 2019) (citing a "number of cases" that have "held that the Federal Circuit's reasoning in <u>Avocent</u> [] need not be confined to patent litigation, but is equally applicable to suits seeking a declaration of non-infringement of other intellectual property rights such as copyrights or trademarks" (internal quotation omitted)); <u>Am. Intercontinental Univ., Inc. v. Am. Univ.</u>, No. 16 C 10669, 2017 WL 3478805, at *4 (N.D. Ill. Aug. 14, 2017) (discussing <u>Avocent</u> and finding that "[t]here is nothing unique to [the patent] context that would suggest the same logic does not apply to a suit for declaratory judgment of non-infringement of a trademark"); <u>Ontel Prod. Corp. v. Mindscope Prod.</u>, 220 F. Supp. 3d 555, 561 (D.N.J. Dec. 8, 2016) (finding <u>Avocent</u>'s "reasoning persuasive" and concluding that a declaratory judgment action of non-infringement of a trademark "relate[s] to the defendant's [trademark] enforcement activities, not to where the defendant commercialized its products"). Applying the reasoning in <u>Avocent</u> to this case, the court cannot assert personal jurisdiction over Primal Wear based on its sales and marketing activity in New Hampshire, as these contacts do not satisfy the relatedness element of the Due Process standard. Since Primal Wear's only other in-state contacts (the cease-and-desist letter and related communications) cannot support jurisdiction, either, the court lacks personal jurisdiction over Primal Wear. The court need not proceed to analyze the purposeful availment and reasonableness elements of the Due Process standard.

18

Primal Hardwere does not dispute that the defendant's cease-and-desist communications alone cannot form the basis for personal jurisdiction. Nor does Primal Hardwere dispute that the defendant's remaining in-state contacts (its online marketing campaign and sales to New Hampshire residents) are not related to the declaratory judgment action.[28] Instead, Primal Hardwere insists that the court should consider all of the defendant's in-state contacts as a single set of business activities, essentially finding that the cease-and-desist communications satisfy the relatedness element of the Due Process standard, and that the sales and marketing activities constitute purposeful availment of the forum and provide the additional contacts needed to establish personal jurisdiction. The court finds no support for such an approach in the case law, including in the three cases Primal Hardwere cites in connection with this argument. None of the three cases group cease-and-desist letters and in-state commercial activity together when conducting the Due Process analysis, as Primal Hardwere suggests; at most, the courts consider the cease-and-desist letters alongside other in-state patent enforcement activity to establish personal jurisdiction in a manner consistent with Avocent.

---

[28] At oral argument, Primal Hardwere attempted to distance itself from this position. But on two occasions in its brief, the plaintiff asserted that its declaratory judgment action arose directly from Primal Wear's cease-and-desist letter and related communications with the plaintiff. The plaintiff made no such assertion with respect to its in-state sales and marketing activity. See Pl.'s Objection (doc. no. 8) at 13 ("Defendant sought out Plaintiff in New Hampshire by sending threatening letters to Plaintiff asserting trademark rights in New Hampshire and requiring Plaintiff to stop selling certain items and threatening Plaintiff with litigation. This [declaratory judgment] action arises specifically out of the letters sent by defendant to Plaintiff in New Hampshire"); id. at 16 ("Defendant is effectively asking this Court to separate its New Hampshire contacts into two buckets. The first bucket, to which this lawsuit is clearly related, is Defendant's intimidating letters and negotiations with Plaintiff. The second bucket is Defendant's sales, custom orders, and targeted advertisements" (emphasis added)).

First, in Nova Biomedical, the First Circuit Court of Appeals held that "the assertion of jurisdiction" over the out-of-state defendant in an action for declaratory judgment of patent non-infringement "would comport with due process, given [the defendant's] extensive and ongoing contacts with the forum." 629 F.2d at 197. The Court stated that the defendant's mailing of two cease-and-desist letters into the forum alone was not "sufficient to satisfy the constitutional standard." Id. at 191. The defendant's other in-state contacts included "a cross-licensing agreement with a Massachusetts corporation . . . covering the patent in suit" and "obligat[ing] each party to inform the other of any suspected infringement by third parties"; sales of products and chemicals to the same Massachusetts corporation (some of which were connected to the patent-in-suit); and two visits to Massachusetts on business. Id. at 191-92. The Court reasoned that, by "entering into the licensing agreement with [a Massachusetts corporation] and visiting Massachusetts twice on related business," the defendant purposefully availed itself of the forum state. Id. at 193 n.3. Then, the Court stated that the "[o]ther factors relevant to the constitutional inquiry[,]" relatedness and reasonableness, "reinforce the propriety of asserting jurisdiction in the present case." Id. (citations omitted).

Importantly, the Court did not make a ruling on whether the defendant's in-state contacts satisfied the relatedness element, stating instead that "whether or not [the declaratory judgment] suit can be said to 'arise from' [the defendant's] principal contacts with the forum, the two are connected, at least in the sense that they involve the same patent. In any event, the fact that a controversy is unrelated to the defendant's activity in

20

the forum is not necessarily fatal to the existence of jurisdiction there, so long as its forum-related business is substantial." Id. (citing cases discussing general personal jurisdiction). In sum, Nova Biomedical does not support the plaintiff's position by stating that the defendant's in-state contacts either did not need to satisfy the relatedness element because they were substantial, or did satisfy the relatedness element because they included an in-state licensing agreement concerning the patent-in-suit (which Avocent characterizes as a patent enforcement, and not commercial, activity that supports personal jurisdiction).[29]

Next, the plaintiff cites Der-Tex Corp. v. Thatcher, 815 F. Supp. 41 (D. Mass 1993), in which the Court held that it had personal jurisdiction over the out-of-state defendant in a declaratory judgment action based on the following in-state contacts: the defendant engaged in two phone calls with the plaintiff "in which patent infringement and litigation were discussed"; the defendant's California-based licensee, Deckers Corporation, sold the patented product through "over 40 different Massachusetts retailers"; and the defendant had 69 separate mail orders in Massachusetts in 1991. Id. at 42-43. The Court's Due Process analysis of personal jurisdiction spanned a single paragraph, in which it explained that it "appl[ied] the reasoning of Nova Biomedical to

---

[29] Elsewhere in the opinion, the Nova Biomedical Court gives a nod to Avocent's holding that a declaratory judgment action like the one at bar arises from patent enforcement activity such as licensing agreements, and not commercial activity. When discussing, but not deciding, "the second question presented as an alternative on appeal[,] whether [the declaratory judgment] action can be regarded as 'arising from' [the defendant's] licensing arrangement" with a Massachusetts corporation, the Court found it "worthy of note . . . that, in situations similar to the one at bar, courts have recognized a close connection between a patent declaratory judgment action and the defendant's patent-related licensing or rental activities in the forum." 629 F.2d at 195 n.9.

the similar facts in the [] case" to conclude that the defendant's "'extensive and ongoing contacts' were sufficient to support personal jurisdiction over the defendant." Id. at 43 (quoting Nova Biomedical, 629 F.2d at 193). The Der-Tex Court identified the 'similar facts' as follows:

> "[i]n Nova Biomedical, as in the instant case, through a licensee, defendant sold a product which competed with that of plaintiff in Massachusetts. Also, as in the instant case, after receiving notice from defendant that plaintiff's product infringed on the defendant's patent, the plaintiff in Nova Biomedical sought a declaratory judgment that its product was non-infringing."

Id. The Court's emphasis on the defendant's licensing arrangement and its reliance on Nova Biomedical indicate that, once again consistent with Avocent, the court relied in part on an in-state patent enforcement activity (the sale of goods through a licensing agreement) to establish personal jurisdiction over the defendant. To the extent that the Der-Tex holding could be interpreted as supportive of the plaintiff's position (in part due to its relative lack of detail), this single, non-binding opinion is not sufficient to convince the court to defy the substantial weight of authority that, as discussed above, supports Avocent and precludes the court from exercising personal jurisdiction over Primal Wear based on its cease-and-desist communications and limited, commercial activity in the state.

Finally, the plaintiff cites Teuter v. Crosley-Corcoran, 961 F. Supp. 2d 333 (D. Mass. Sept. 10, 2013). In Teuter, the out-of-state defendant's contacts with the forum consisted of emailing a cease-and-desist notice to the plaintiff and sending two takedown notices to the plaintiff's internet service providers, requiring the removal of allegedly infringing material from the plaintiff's website Id. at 335-36. The Teuter Court noted

that, under Nova Biomedical, the defendant's "cease-and-desist letter would by itself be insufficient to establish personal jurisdiction in Massachusetts." Id. at 339. But the Court found that the defendant's "tortious act" of invoking "the [] takedown process to improperly remove protected content from [the plaintiff's] (a Massachusetts resident) website" provided the additional contacts required to establish personal jurisdiction. Id. at 338-39. Teuter does not support the plaintiff's position, as the tortious conduct described in Teuter is patent enforcement activity that is related to the declaratory judgment action in the manner Avocent requires. Such tortious conduct alters the jurisdictional analysis and is absent in the instant case.

Primal Hardwere does not cite any case law that clearly contradicts Avocent and permits the court to assert specific personal jurisdiction over a defendant whose in-state contacts consist only of cease-and-desist letters, emails, and phone calls, and limited commercial activity that is not related to the declaratory judgment action. Since the defendant's in-state contacts (aside from its cease-and-desist letter and related communications) do not satisfy the relatedness element of the Due Process standard, the court cannot exercise jurisdiction over Primal Wear in connection with this suit. The defendant's motion to dismiss for lack of personal jurisdiction is granted.

## IV.    Conclusion

For the foregoing reasons, the Motion to Dismiss, or in the Alternative, to Transfer Venue[30] is GRANTED.

---

[30] Doc. no. 7.

23

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

July 30, 2021

cc:    Robert Terry Parker, Esq.
       Edward J. Sackman, Esq.